Present:  All the Justices

COMMONWEALTH OF VIRGINIA[*]

v.  Record No. 041454

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
March 3, 2005

RICHARD BRYAN ALLEN

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Alfred D. Swersky, Judge Designate

Pursuant to Code § 37.1-70.6(A), the Commonwealth petitioned the Circuit Court of the City of Alexandria to civilly commit Richard Bryan Allen as a sexually violent predator.  Following a hearing, the trial court sitting without a jury determined that the Commonwealth had not met its burden of proving by clear and convincing evidence that Allen is a sexually violent predator.  Accordingly, the trial court dismissed the Commonwealth's petition.  The Commonwealth appeals from this judgment, contending that the trial court erred in admitting the testimony of Allen's expert witness, a psychologist who is not licensed to practice in Virginia.  The Commonwealth further contends that the trial court erred in finding that the Commonwealth had not met its burden of proof.

_____

[*] In the trial court this case was styled "Jerry W. Kilgore, Attorney General of Virginia, ex rel. Commonwealth of Virginia v. Richard Bryan Allen."  We have amended the style of the case to reflect that the Commonwealth is the real party in interest, not a relator.  See Townes v. Commonwealth, 269 Va. ___, ___ n.*, ___ S.E.2d ___, ___ n.* (2005) (today decided).

BACKGROUND

On January 19, 1983, Allen was convicted of the aggravated sexual battery of an eight-year-old girl and a nine-year-old girl. Allen was sentenced to ten years' imprisonment for each offense, with the sentences to run consecutively.

Allen was released on parole on September 13, 2001. Within days of his release, however, Allen violated the conditions of his parole and was returned to prison to serve the remainder of his sentence. On July 9, 2003, as required by Code § 37.1-70.4(C), the Director of the Virginia Department of Corrections notified the Commitment Review Committee (CRC) that Allen, who was scheduled to be released from prison on September 14, 2003, was subject to review for commitment because he was incarcerated for a sexually violent offense and had been identified through a preliminary screening test as being likely to re-offend. As required by Code § 37.1-70.5(B), the CRC referred Allen to Dr. Ronald M. Boggio, Ph.D., a licensed clinical psychologist, for evaluation. Following receipt of Dr. Boggio's evaluation report, the CRC completed its assessment of Allen and, on August 7, 2003, forwarded to the Attorney General a recommendation that

the Commonwealth seek to have Allen committed to a secure mental health facility as a sexually violent predator.

On August 14, 2003, the Commonwealth filed in the trial court a petition for the civil commitment of Allen as a sexually violent predator. The trial court appointed counsel to represent Allen, Code § 37.1-70.2, and, upon Allen's motion, ordered that funds be provided for a mental health expert to aid in Allen's defense, Code § 37.1-70.8. Thereafter, the trial court conducted a hearing as required by Code § 37.1-70.7. The trial court determined that there was probable cause to believe that Allen is a sexually violent predator and ordered that Allen be held in custody until a full hearing on the Commonwealth's petition could be conducted. Although permitted by Code § 37.1-70.9(B), neither Allen nor the Commonwealth requested a jury trial on the commitment petition.

On December 12, 2003, the trial court conducted a trial on the Commonwealth's petition.[1] The Commonwealth presented evidence from Carmen Baylor, the custodian of records for the Greensville Correctional Center where Allen had been

---

[1] Code § 37.1-70.9 requires that the trial be conducted within 90 days of the determination of probable cause under Code § 37.1-70.7. In a continuance order entered October 30, 2003, Allen waived his objection to the ninety-day requirement.

3

incarcerated.  Baylor testified that while incarcerated Allen had committed 246 institutional infractions, including 15 for assault, four for indecent exposure, most recently in January 2003, and one instance of having consensual sex with another inmate.[2]

Barbara Ward, a senior probation/parole officer with the Alexandria Adult Probation/Parole Office testified for the Commonwealth that she was assigned to supervise Allen's parole following his initial release from prison on September 13, 2001. Ward testified that she explained the rules of his parole to Allen, and that he acknowledged his agreement to abide by them. Nonetheless, Allen was late for his next meeting with Ward on September 17, 2001 and failed to appear for the next subsequent meeting.

Ward testified she learned that Allen had been seen with a young woman with Down's Syndrome who was referring to Allen as

---

[2] Allen has not assigned cross-error to the admission of evidence concerning non-sexual institutional infractions or the total number of infractions.  Accordingly, we express no opinion on the admissibility of that evidence and will consider its weight in reviewing the trial court's final judgment.  But see McCloud v. Commonwealth, 269 Va. ___, ___, ___ S.E.2d ___, ___ (2005) (holding that trial court did not abuse its discretion in limiting introduction of such evidence in a jury trial on the Commonwealth's petition to commit a prisoner as a sexually violent predator).

4

her "boyfriend."  After Allen was arrested for violating the terms of his parole by failing to meet with Ward, Ward went to Allen's room at the halfway house where he had been staying and discovered that he had come into possession of a pornographic magazine.

Dr. Boggio, the psychologist who had performed the pre-release evaluation of Allen for the CRC, testified as the Commonwealth's mental health expert.  Dr. Boggio principally based his testimony upon the personal interview and tests he had conducted during his evaluation of Allen.  Dr. Boggio testified that Allen recounted a lengthy history of behavioral problems from an early age, including setting fires, police confrontations, and hitting other children and teachers.  Allen was suspended from the New York City public schools as a result of his violence, and lived as a runaway for a period of time.

Dr. Boggio further testified that Allen bragged about the extent of his violent behavior and expressed no remorse.  Allen told Dr. Boggio that ever since Allen was a child he had been known for having a "temper problem" and for being easily angered.  When Allen was a teenager, he pulled a knife on a female co-worker who referred to him with a racial slur.

According to Dr. Boggio, Allen had a long history of psychiatric care that began as a juvenile, including both in-patient and out-patient treatment.  Allen was expelled for fighting from the Commonwealth Center for Children & Adolescents, then known as the DeJarnette Center, an acute care mental health facility operated by the Virginia Department of Mental Health, Mental Retardation and Substance Abuse Services.  Dr. Boggio also reviewed the pre-sentence investigation from Allen's convictions for aggravated sexual battery, which revealed that his behavioral problems began at age four-and-a-half, including disruptive and aggressive behavior, and later included sexually inappropriate behavior.  Allen also reported 13 suicide attempts, beginning at age 13.  Dr. Boggio also testified that the official records indicated Allen had diagnoses of the depressive disorder spectrum as well as antisocial personality disorder (APD) and polysubstance dependence.  At least two of Allen's institutional charges were for possession or use of alcohol or illegal substances.

Allen reported to Dr. Boggio that his first sexual experience was intercourse with two girls when he was 16; one girl was between 11 and 13 years of age and the other was 13 or 14.  Allen also told Dr. Boggio that he had an on-going sexual

6

relationship with an eleven-year-old girl when he was seventeen. Allen also claimed to have had a sexual relationship with the mother of his two victims, and admitted that he had engaged in homosexual activity while in prison. Allen claimed never to have been "in love" with anyone despite having had many different relationships.

Dr. Boggio testified that Allen claimed he thought his nine-year-old victim was twelve, because she was "very developed." He also claimed that the nine-year-old victim initiated the sexual encounter. He denied having assaulted the eight-year-old victim. Dr. Boggio found it important to note that Allen had no immediate post-abuse feelings about himself, the victims, or his behavior other than to deny involvement, and that Allen expressed no remorse for the victims. Similarly, Allen denied responsibility for the infractions he committed while incarcerated.

Dr. Boggio diagnosed Allen with APD, dysthymic disorder, and polysubstance dependence. Dr. Boggio testified, reading from the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, (4th ed. Revised text 2000), regarding APD:

> In order to meet this diagnosis, one has to have three of the following: Failure to conform to social norms

7

with respect to lawful behaviors, as indicated by repeatedly performing acts that are grounds for arrest . . . deceitfulness, as indicated by repeated lying, use of aliases, or conning others for personal profit or pleasure . . . impulsivity or failure to plan ahead . . . irritability and aggressiveness, as indicated by repeated physical fights or assaults . . . reckless disregard for the safety of self or others . . . consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations . . . lack of remorse, as indicated by being indifferent to or rationalizing having hurt, mistreated, or stolen from another. Additionally, the individual has to be at least 18 years of age and has evidence of conduct disorder with onset before age 15.

Dr. Boggio testified that Allen met all of these criteria, with the possible exception of failing to maintain a consistent work history.

Based on tests he administered to Allen, Dr. Boggio testified that Allen has a composite IQ score of 103, plus or minus 6 points, indicating that Allen is of average intelligence. Dr. Boggio also had Allen complete the Millon Clinical Multiaxial Inventory-III (MCMI-III). Dr. Boggio testified that Allen's responses to the MCMI-III showed that he has longstanding personality defects with no coping mechanisms, meaning that Allen would repeat problem behaviors over and over again, despite the consequences.

Dr. Boggio also had Allen complete the Hare Psychopathy Checklist Revised (Hare), an instrument designed to measure

psychopathic behaviors.  Allen's score on this test placed him in approximately the 90th percentile of incarcerated individuals, suggesting a strong indication of a psychopathy to take advantage of and manipulate people without regard to their feelings or thoughts, and a tendency not to show remorse for this behavior.  Dr. Boggio found the results of the Hare test correlated with all the things that Allen had said during their interview.

Dr. Boggio also administered the Static-99, a test used to predict sex offender recidivism, to Allen.  According to Dr. Boggio, Allen's scores on this test predicted that Allen would have a 33% likelihood of committing another sexual offense after 5 years following his release from prison, a 38% likelihood after 10 years, and a 40% likelihood after 15 years.  Using a formula to extrapolate beyond 15 years, Dr. Boggio concluded that Allen would have a 62.7% likelihood of recidivism after 25 years.  On the Rapid Risk Assessment for Sex Offender Recidivism test, Dr. Boggio scored Allen with a 36.9% chance of reconviction in 10 years, and a 60.8% likelihood of reconviction in 25 years.[3]  Dr. Boggio also testified that these tests rely

---

[3] Dr. Boggio explained that there is a difference between recidivism, that is the committing of a crime without regard to

upon actuarial predictions and do not purport to satisfy completely the issue the tester "is being asked to predict."

Dr. Boggio testified that in his opinion Allen is likely to re-offend in the future because of an inability to control those impulses that arise because of his personality disorder. Dr. Boggio noted that Allen's lack of concern for others and his tendency to act compulsively and without remorse make Allen much more likely to be a repeat offender because he fails to see the importance of respecting the rights of others.

Dr. Boggio did not diagnose Allen as a pedophile, but opined that Allen has a tendency to act to satisfy his own needs and a "belief that people can be manipulated and that people can be taken advantage of." Dr. Boggio testified that this "predatory behavior" puts children as well as individuals with impaired cognitive functioning at risk because they are easily manipulated.

In conclusion, Dr. Boggio testified that in his opinion Allen needed in-patient treatment in a secure mental health facility. He opined that out-patient treatment would not be appropriate because Allen has had no sex offender treatment

whether the subject is arrested and convicted, and reconviction, that is actually being convicted for an offense.

while in prison, has no awareness that he needs help, was unable to follow rules while on parole, and has a long history of not being able to follow rules.

Dr. Timothy P. Foley, Ph.D., testified as an expert witness for Allen. Dr. Foley is a psychologist licensed in Pennsylvania and New Jersey. Although not licensed to practice in Virginia, Dr. Foley contacted the Virginia Board of Psychology and obtained permission to perform an evaluation of Allen in Virginia.

To establish Dr. Foley's qualifications as an expert, Allen elicited testimony from Dr. Foley concerning his background and experience in the field of treating sexually violent persons. Dr. Foley testified that he had previously evaluated approximately 250 sexually violent predators for the courts and as a defense expert and had testified in over 200 such cases. Dr. Foley further testified that currently he is employed by federal district courts in both Pennsylvania and New Jersey to assess and treat sexual offenders. He previously was the supervisor of the sexual offender program at a state prison in Pennsylvania for two years. Dr. Foley's curriculum vitae, which was admitted into evidence, showed that he is a member of the Association for the Treatment of Sexual Abusers and has

11

published numerous articles concerning treatment of sexual offenders.  Dr. Foley testified that he is familiar with the statutory standards that apply to proceedings for the commitment of sexually violent predators in Virginia.

The Commonwealth objected to Dr. Foley being qualified as an expert witness, asserting that "he's not licensed in this state or familiar with the state standards."  The trial court overruled the Commonwealth's objection.

Dr. Foley testified that he had reviewed Allen's institutional file from the Department of Corrections and other reports.  Dr. Foley also administered various tests to Allen including the Minnesota Multiphasic Personality Inventory-2 and the Abel Screen.  Dr. Foley testified that the Abel Screen is a valid, reliable test to determine sexual preferences and abnormal interests.  Dr. Foley concurred in Dr. Boggio's conclusion that Allen was not a pedophile, but opined that he has a "socially deviant" interest in sexually mature underage females.  Dr. Foley characterized this as "a common finding among heterosexual males."

Dr. Foley administered a longer version of the Hare Psychopathy Checklist to Allen.  Dr. Foley testified that Allen received a prorated score of 26.7, which is not indicative of a

12

psychopathic classification.  Dr. Foley testified that the most robust predictors of sexual offense recidivism are measured sexual deviance and evidence of psychopathy, and that Allen scored below the range of the psychopathy cutoff.

Dr. Foley testified that he also administered the Static-99 to Allen and that the results were comparable to those achieved when Dr. Boggio administered that test.  While Dr. Foley agreed with Dr. Boggio's general assessment of the results of the Static-99 with regard to the likelihood that Allen would re-offend, he characterized that result as meaning "there is less than half a chance that Allen would be a recidivist [after] 15 years."  Dr. Foley further qualified his assessment of the Static-99 results by stating that the base population for the test were adults who "had committed offenses as adults and had been on the street for a period of time," whereas Allen had been a juvenile at the time of his original offenses and "has never been on the street as an adult."

Dr. Foley agreed with Dr. Boggio's assessment that Allen suffers from APD.  Dr. Foley testified that while Allen's antisocial personality traits "[p]robably . . . will remain for the rest of [his] life," his "propensity to act them out will decrease with age."  Moreover, it was Dr. Foley's opinion that

13

Allen "did not . . . suffer[] from an inability to control his sexual impulses." Dr. Foley testified that in his opinion Allen's personality disorder does not predispose him to commit sexually violent offenses.

On rebuttal, Dr. Boggio testified that he disagreed with Dr. Foley's opinion regarding Allen's propensity to re-offend. While Dr. Boggio agreed that Allen's propensity to act on his sexual impulses would decrease, he opined that Allen would remain at risk for re-offending throughout his life.

Dr. Boggio disagreed with Dr. Foley's use of the Abel Screen as a predictor of sexual preferences and abnormal interests. He testified that published reliability data suggest that the Abel Screen is not accurate. Dr. Boggio further testified that several state and federal courts have held that the Abel Screen is not scientifically reliable.

Dr. Boggio also disagreed with Dr. Foley's assumption that psychopathy is the most robust predictor of recidivism. Dr. Boggio opined that sexual deviance and antisocial lifestyle are more predictive of a person's future actions, and that psychopathy is just one part of the equation.

Dr. Boggio reiterated his opinion that, in light of Allen's APD, his demonstrated history of antisocial offending, and his

convictions for predatory sexual offenses, Allen is likely to re-offend in the future. Dr. Boggio opined that this likelihood is more than 50% based on all the actuarial data.

In its summation, the trial court noted that "each of the experts [were] both well-qualified, both well-prepared, and convincing." Thus, although it expressed "a very, very generalized fear of releasing Mr. Allen on the public," the trial court ruled that the Commonwealth had not proven by clear and convincing evidence that Allen is likely to engage in sexually violent acts in the future. Accordingly, the trial court dismissed the Commonwealth's petition to have Allen civilly committed as a sexually violent predator.

On February 18, 2004, the Commonwealth filed a motion to reconsider. The Commonwealth renewed its objection to the trial court's ruling permitting Dr. Foley to testify as an expert witness because he is not licensed to practice in Virginia. The Commonwealth further contended that Dr. Foley's evaluation of Allen was based on "an incorrect standard" that would require proof that a prisoner is incapable of controlling his sexually violent impulses, rather than proof that a prisoner is likely to re-offend.

15

On March 24, 2004, the trial court entered an order denying the Commonwealth's motion to reconsider. In that same order, the trial court reiterated its prior ruling that the Commonwealth had not proven by clear and convincing evidence that Allen "is a sexually violent predator within the meaning of Virginia Code Section 37.1-70.1, et seq." Accordingly, the trial court dismissed the Commonwealth's petition and ordered that Allen be unconditionally released. This appeal followed.

DISCUSSION

This case, along with Townes v. Commonwealth, 269 Va. ___, ___ S.E.2d ___ (2005) (today decided) and McCloud v. Commonwealth, 269 Va. ___, ___ S.E.2d ___ (2005) (today decided), involves the procedures required to be followed in order for the Commonwealth to have a prisoner who has been convicted of a sexually violent offense declared to be a sexually violent predator and to have that prisoner involuntarily committed to a secure mental health facility upon his release from prison. Those procedures are set out in Chapter 2, Article 1.1 of Title 37.1, commonly referred to as the Sexually Violent Predators Act (SVPA). Code §§ 37.1-70.1 through 37.1-70.19. We have reviewed those procedures in some

16

detail in McCloud and need not do so again here.  This case presents issues not addressed in Townes or McCloud.

We first address the Commonwealth's contention that the trial court erred in permitting Dr. Foley to qualify as an expert witness at trial because he is not licensed to practice in Virginia.  At the time the trial court granted Allen's motion for funds to employ Dr. Foley as an expert, Code § 37.1-70.8(A) (Supp. 2003) provided:[4]

> Any person who is the subject of a petition under this article shall have, prior to trial, the right to employ experts at his own expense to perform examinations and testify on his behalf.  However, if a person has not employed an expert and requests expert assistance, the judge shall appoint such experts as he deems necessary to perform examinations and participate in the trial on the person's behalf.

---

[4] In 2004, Code § 37.1-70.8(A) was amended and now requires that any expert appointed to assist a defendant "shall have the qualifications required by subsection B of § 37.1-70.5."  See Acts 2004, ch. 764.  Code § 37.1-70.5(B) sets the qualifications for the professional designated by the CRC to perform the mental health examination of a prisoner identified as being subject to the SVPA and provides that the examination must be conducted by "a licensed psychiatrist or a licensed clinical psychologist, designated by the Commissioner of the Department of Mental Health, Mental Retardation and Substance Abuse Services."  A further provision of the amended version of Code § 37.1-70.8(A) provides that a privately employed expert need only be "a licensed psychiatrist or a licensed clinical psychologist." Because this amendment did not come into force until after Allen's trial, we express no opinion on its effect or validity.

17

Where a statute designates express qualifications for an expert witness, the witness must satisfy the statutory criteria in order to testify as an expert. See Hinkley v. Koehler, 269 Va. 82, 87, 606 S.E.2d ___, ___ (2005); Perdieu v. Blackstone Family Practice Ctr., Inc., 264 Va. 408, 419, 568 S.E.2d 703, 709 (2002); Sami v. Varn, 260 Va. 280, 283, 535 S.E.2d 172, 174 (2000). Nothing in Code § 37.1-70.8(A), as applicable at the time of Allen's trial, or elsewhere in the SVPA expressly requires or by implication suggests that a mental health expert employed or appointed to assist a prisoner must be licensed to practice in Virginia. In the absence of express statutory requirements for the qualification of an expert witness in this particular type of proceeding, we will apply the general rules applicable to expert testimony in other civil cases. See Code § 8.01-401.3.

The sole purpose of permitting expert testimony is to assist the trier of fact to understand the evidence presented or to determine a fact in issue. Id.; Santen v. Tuthill, 265 Va. 492, 498, 578 S.E.2d 788, 792 (2003); John v. Im, 263 Va. 315, 319, 559 S.E.2d 694, 696 (2002). Generally, a witness is qualified to testify as an expert when the witness possesses sufficient knowledge, skill, or experience to make the witness

18

competent to testify as an expert on the subject matter at issue. See Sami, 260 Va. at 284, 535 S.E.2d at 174; Noll v. Rahal, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979). "In essence, all that is necessary for a witness to qualify as an expert is that the witness have sufficient knowledge of the subject to give value to the witness's opinion." Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002). Without question, Dr. Foley's education, employment experience, and professional knowledge and skill with respect to the identification and treatment of sexually violent offenders qualified him to render an opinion that would assist the trial court.

The Commonwealth contends, however, that the trial court further erred in not rejecting Dr. Foley's testimony and granting the Commonwealth's motion to reconsider because his testimony was based on an improper standard, thus demonstrating that he lacked a sufficient appreciation of the requirements for finding that Allen is a sexually violent predator under the SVPA. We disagree.

"The admission of expert testimony is committed to the sound discretion of the trial judge, and we will [reject] a trial court's decision only where that court has abused its

19

discretion." Brown v. Corbin, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992); see also Hinkley, 269 Va. at 91, 606 S.E.2d at ___. Similarly, when the admission of expert witness testimony is challenged in a post-trial proceeding, the determination whether that testimony was properly received is a matter committed to the trial court's discretion. When the admissibility of the expert's testimony is subsequently challenged on appeal, that testimony must be viewed as a whole. See Hussen v. Commonwealth, 257 Va. 93, 99, 511 S.E.2d 106, 109 (1999).

While the Commonwealth can point to isolated statements in Dr. Foley's testimony and in his written evaluation of Allen that do not track the precise language of the definition of a sexually violent predator in the SVPA, it also is clear that Dr. Foley was aware of that standard. Indeed, in his written evaluation Dr. Foley quotes language from Code § 37.1-70.1 defining the standard almost verbatim. Moreover, even if we were to agree with the Commonwealth that Dr. Foley's opinion that Allen does not meet the SVPA's definition of a sexually violent predator was based on a standard higher than that required by the SVPA, the trial court could nonetheless consider the other evidence presented by Dr. Foley regarding Allen's performance on the various tests administered by Dr. Foley to

20

make its own determination of the ultimate issue of fact.[5] Accordingly, we hold that the trial court did not abuse its discretion in receiving Dr. Foley's testimony and did not err in denying the Commonwealth's motion to reconsider.

Next, the Commonwealth contends that the trial court erred in determining that there was not clear and convincing evidence that Allen is a sexually violent predator who is likely to commit sexually violent acts in the future. The Commonwealth concedes that the clear and convincing standard of proof places a heavy burden upon it. Indeed, the Commonwealth's burden of proving the necessity of involuntary civil confinement by clear and convincing evidence arises from due process concerns and, thus, is of constitutional dimension and not merely a statutory elective. See Addington v. Texas, 441 U.S. 418, 432-33 (1979).

"Clear and convincing evidence has been defined as 'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations

---

[5] On brief, the Commonwealth further argues that Dr. Foley's testimony should be rejected because he "placed great reliance on the Abel Screen, which . . . has not been peer reviewed and which has been rejected by the majority of courts as unreliable." The record in this particular case does not support that contention, and because the issue was not resolved, we express no opinion on whether results of an Abel Screen will be admissible in future cases.

21

sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal.' "  Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)) (emphasis omitted); see also Judicial Inquiry & Review Commission v. Lewis, 264 Va. 401, 405, 568 S.E.2d 687, 689 (2002).  The Commonwealth asserts that the trial court erred in adopting the view, which the Commonwealth contends was espoused by Dr. Foley, that it was required to prove that Allen would be unable to control his impulses toward sexually violent behavior, rather than the appropriate standard, which requires it to prove only that Allen would likely re-offend.  While we agree with the Commonwealth's contention regarding the appropriate standard of proof, we do not agree that the trial court failed to apply that standard in assessing the evidence in this case.

Nothing in the trial court's conduct of the trial suggests that it was requiring the Commonwealth to prove that Allen would be unable to control his sexual impulses.  To the contrary, in its summation the trial court expressly stated that "[t]he standard here is whether or not Mr. Allen would be likely to

22

commit a sexually violent offense." (Emphasis added). This is in accord with the standard prescribed by Code §§ 37.1-70.1 and 37.1-70.9. See McCloud v. Commonwealth, 269 Va. ___, ___, ___ S.E.2d ___, ___ (2005) (decided today).

In urging this Court to reject the trial court's determination that there was not clear and convincing evidence that Allen is likely to commit future sexually violent acts, the Commonwealth promotes the testimony of its expert, Dr. Boggio, while discounting that of Allen's expert, Dr. Foley. In essence, the Commonwealth desires this Court to reweigh the testimony of the two experts and to substitute our judgment for that of the trial court. However, as in all civil cases, the judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will not be set aside unless it appears that the judgment is plainly wrong or without evidence to support it. Code § 8.01-680. When, as here, the evidence "presented a 'battle of experts,' . . . we will defer to the trial court's judgment of the weight and credibility to be given their testimony." Board of Supervisors v. HCA Health Services of Virginia, Inc., 260 Va. 317, 332, 535 S.E.2d 163, 171 (2000). Thus, while we may share the obvious concern expressed by the trial court with respect to a "generalized fear

23

of releasing Mr. Allen on the public," we cannot say that the trial court's conclusion that the evidence did not rise to a level of clear and convincing evidence that Allen would be likely to commit future acts of sexual violence is plainly wrong or without evidence to support it.  Accordingly, we hold that the trial court did not err in determining that the Commonwealth had not met its burden of proof to establish that Allen is a sexually violent predator as defined by Code § 37.1-70.1.

CONCLUSION

For these reasons, we will affirm the judgment of the trial court dismissing the Commonwealth's petition to civilly commit Allen as a sexually violent predator.

<u>Affirmed</u>.

JUSTICE KINSER, with whom JUSTICE LEMONS joins, concurring in part and dissenting in part.

I respectfully disagree with the majority's holding "that the trial court did not err in determining that the Commonwealth had not met its burden of proof to establish that [Richard Bryan] Allen is a sexually violent predator as defined by Code § 37.1-70.1."  On appeal, the question is whether the trial court's judgment is plainly wrong or without evidence to support it.  Code § 8.01-680.  I conclude that it is without evidence to support it.

24

Contrary to the majority's description of the evidence, this case was not simply a "battle of experts." And, the trial court did not view it as such. The trial court found both experts to be "well-qualified," "well-prepared," and "convincing." The court did not indicate that it placed greater weight on the testimony of one expert over that of the other or found one to be more credible. Instead, the court stated:

I suspect what it gets down to is that this law has asked more of the mental health care professionals than they can deliver. Dr. Foley said he didn't have a crystal ball. Dr. Boggio didn't say it, but he certainly implied he didn't have a crystal ball. And I can assure you that I don't have a crystal ball.

The trial court therefore concluded that the Commonwealth had not carried its burden of proving by clear and convincing evidence that Allen would likely engage in sexually violent acts.

Proof by clear and convincing evidence, however, does not mean having a "crystal ball." Instead, the term "clear and convincing evidence" has been defined as

> that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a

25

> mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (1954)); accord Judicial Inquiry & Review Comm'n v. Lewis, 264 Va. 401, 405, 568 S.E.2d 687, 689 (2002).

In order to prove Allen is a sexually violent predator under the provisions of Code § 37.1-70.1, the Commonwealth had to establish by clear and convincing evidence that Allen "[had] been convicted of a sexually violent offense," as defined in that statutory provision, and that "because of a mental abnormality or personality disorder, [Allen] finds it difficult to control his predatory behavior which makes him likely to engage in sexually violent acts."  The parties agree that Allen had the predicate conviction; indeed, he had two convictions of aggravated sexual battery of young girls.  Dr. Timothy P. Foley, Ph.D., testifying for Allen, and Dr. Ronald M. Boggio, Ph.D., the licensed clinical psychologist who testified on behalf of the Commonwealth, both agreed that Allen has a personality disorder, specifically Antisocial Personality Disorder (APD).

26

Thus, the contested issue was whether, because of his APD, Allen is "likely to engage in sexually violent acts."

While the two experts disagreed on the answer to this question, there was little or no difference in their opinions in many respects. As already stated, both agreed that Allen has APD. One of the tests given by Dr. Boggio, the Millon Clinical Multiaxial Inventory-III revealed that Allen has pervasive, longstanding personality problems that leave him with no coping mechanisms, make it difficult for him to follow socially acceptable norms of behavior, and cause him repeatedly to engage in "self-defeating patterns of behavior" despite the consequences. Dr. Foley reached similar conclusions based on Allen's test results on the Minnesota Multiphasic Personality Inventory-2. Dr. Foley testified that the test results were "indicative of somebody with a lot of authority struggles, somebody who has a hard time following the rules, somebody who is restless, somebody who is suspicious, hypersensitive, blameful, may exhibit poor judgment at times, [and] demonstrate[s] a lack of insight."

Similarly, on the Static-99, an actuarial risk assessment test designed to predict sex offender recidivism, Dr. Foley acknowledged that he and Dr. Boggio were in "substantial

27

agreement."[*]  Dr. Foley testified that Allen has a 33 percent chance of recidivating in 5 years, a 38 percent chance after 10 years, and a 40 percent chance after 15 years.  However, that test, as well as the Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR) that Dr. Boggio also administered, assesses the likelihood of reconviction, not the likelihood that a sex offender will offend again.  Dr. Boggio explained that the data needed to develop an instrument that actually measures recidivism is not available for obvious reasons: offenders are not caught; charges are reduced to lesser crimes; or convictions are not obtained.  Thus, the reconviction rate reflected in tests such as the Static-99 or the RRASOR is lower than the actual re-offending rate.

Also, the data in the Static-99 reaches out for only 15 years.  Since the question under Code § 37.1-70.1 is not limited to whether Allen would commit a violent sexual act within 15 years after release from incarceration, Dr. Boggio used a formula "based on actual base rates of sexual recidivism that

---

[*]     The Static-99 does not entail a clinical judgment about whether a particular person is predisposed to be a repeat sex offender.  As Dr. Foley explained, "the Static-99 does not predict individuals, but it looks at certain characteristics,

28

have been collected in a variety of studies" to extrapolate beyond 15 years.  In doing so, he concluded that, on the Static-99, Allen has a 62.7 percent likelihood for reconviction after 25 years and, on the RRASOR, a 60.8 percent likelihood for reconviction after 25 years.

Dr. Foley did not extrapolate any rate of reconviction for a sexually violent offense beyond the period of 15 years. Instead, he referred to a study and graph prepared by others based on a sample of only 468 people and opined that, while Allen's personality traits will remain throughout the rest of his life, Allen's propensity to act out his attitudes will decrease after 25 years.  Dr. Foley also based this opinion in part on the fact that Allen's institutional infractions had decreased in recent years.  But, Allen had admitted to a counselor that he was trying to modify his behavior because he was hoping to be released soon.  Nevertheless, in his written report, in response to the question "[i]f . . . Allen were released to the community, would he pose a threat to the health and safety of others through sexually violent behavior," Dr. Foley stated, "Based on an actuarial assessment, . . . Allen is

_____

[and] includes that person into a group who is know[n] to have recidivated at a particular level."

29

less than likely to perpetrate sexually violent or predatory acts." The referenced actuarial assessment was the Static-99, the assessment that measures only re-conviction rates and the only one used by Dr. Foley to reach the stated conclusion.

Finally, although Dr. Boggio and Dr. Foley had differing opinions about whether Allen is psychopathic based on the results of the Hare Psychopathy Checklist, Allen scored in approximately the 93rd percentile on Factor 1 in that test, meaning that he has a high measure for callousness, lack of remorse, and inability to put himself in the place of a victim and think about that person before acting. On Factor 2, which measures antisocial lifestyle, Allen was in approximately the 74th percentile.

This evidence demonstrates that the statutory requirements for the civil commitment of sexually violent predators, Code §§ 37.1-70.1 through -70.19, do not ask more of mental health professionals than they can provide. So, where does that leave us in this case? We have two experts who agreed about many aspects of Allen's personality disorder and its effect on him. But, they disagreed about whether Allen is likely to commit sexually violent offenses upon release from incarceration. Dr. Foley's opinion that Allen was not likely to do so, however,

30

focused on the 15-year risk of Allen's being re-convicted for engaging in sexually violent acts. In other words, Dr. Foley's testimony and report did not encompass all the factors, primarily the lifetime risk of re-offending, that must be addressed to determine whether Allen is a sexual predator under Code § 37.1-70.1.

The only expert evidence that was complete in all respects came from Dr. Boggio. His testimony and report provide clear and convincing evidence that Allen is likely to engage in sexually violent acts. Dr. Boggio's opinion to that effect is borne out by the fact that Allen, within a few days of being released on parole, not only was in possession of a pornographic magazine but also was in the company of a young woman with Down's Syndrome who called Allen her "boyfriend."

For these reasons, I conclude that the trial court's judgment is without evidence to support it. See Code § 8.01-680. I therefore respectfully concur in part and dissent in part and would reverse the judgment of the trial court.