# COURT OF APPEALS OF VIRGINIA

## Record No. 1687-24-2

RANDY CEPHUS JONES
v.
COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Ortiz and Callins

Argued at Richmond, Virginia

Opinion Issued April 14, 2026[*]

## FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Robert H. Morrison, Judge

Lauren E. Brice, Assistant Public Defender (Virginia Indigent Defense Commission, on briefs), for appellant.

Aaron J. Campbell, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## CHIEF JUDGE MARLA GRAFF DECKER

Randy Cephus Jones appeals his convictions for strangulation, assault and battery, and abduction. On appeal, Jones challenges the admission of certain expert testimony. He also contests the sufficiency of the evidence on the abduction conviction, arguing that the Commonwealth did not prove he used force or intimidation to detain the victim. Alternatively, he contends that the evidence was not sufficient to support the conviction because any force or intimidation he used to achieve the abduction was merely incidental to the other offenses. After a thorough review of the record and relevant law, we conclude that the trial court did not abuse

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

its discretion in allowing the expert testimony. We further hold that the evidence proved the abduction and Jones's use of force or intimidation to detain the victim was more than the minimum necessary to accomplish the other offenses. For these reasons, we affirm the trial court's judgment.

BACKGROUND[2]

The instant offenses arose from Jones's physical attack on his romantic partner, Charlene Logan, on October 6, 2022. That night, Jones took Logan to his motel room. Once there, Jones argued with Logan about money, expressed jealousy, and accused her of prostitution. Jones yelled, told Logan she could not leave, and ordered her to remove all her clothing except for her underwear. Sometime during the evening, Jones made Logan, wearing only her underwear, stand outside for five to ten minutes while he watched. Over the course of the night, Jones hit Logan about thirty times. At least one of the blows was so forceful that Logan lost consciousness. Jones also choked her three times and threatened to kill her and her son.

At one point during the night, at Jones's insistence, the two of them drove to a bank, where Logan withdrew $300 and gave it to Jones as he instructed. In the early morning, he made Logan drive to his sister's house. After they arrived, Jones announced they were there so someone could "give [him] a reason not to kill this bitch." When Jones's sister tried to talk him out of it, he responded by choking her. Jones's niece called the police.

Halifax County Deputy Trevor Leath arrived at the house in response to the 911 call. Leath spoke with Jones and his sister. The deputy told Jones to leave the property. But he did not talk to

---

[2] "An appellate court must 'review the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court . . . .'" *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025) (quoting *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024)). In doing so, it "accord[s] the Commonwealth the benefit of all reasonable inferences deducible from the evidence." *Id.* (quoting *Garrick*, 303 Va. at 182).

- 2 -

Logan. Jones and Logan left, and the two then returned to Jones's motel room. Jones eventually allowed Logan to leave.

Logan sought medical treatment. She was diagnosed as having suffered a traumatic brain injury. Deputy Leath arrived at the hospital, and Logan reported Jones's conduct. She told the deputy that he should have perceived what was going on while they were at Jones's sister's house that morning.

Based on Logan's account, Leath obtained arrest warrants, and Jones was arrested at the motel. Jones admitted that he slapped Logan's face but nothing more. The Commonwealth charged Jones with abduction, robbery, malicious wounding, assault and battery of a household member, and three counts of strangulation.

At the jury trial, the Commonwealth presented testimony from Logan and Deputy Leath, as well as introduced exhibits of Logan's injuries. The trial court admitted the expert testimony of Jean Ann Cheek, a forensic nurse examiner, and Linda Ellis-Williams, the coordinator for an organization that provides domestic violence and sexual assault services. Cheek testified about her examination of Logan after the attack. She noted that during that examination, she observed physical signs of strangulation, including discoloration in the eyes and back of the throat. Over Jones's objections, both Cheek and Ellis-Williams testified as experts on intimate-partner violence. They explained that most victims of intimate-partner violence do not report it.

After the close of the evidence, the trial court heard arguments on Jones's motion to strike. It granted the motion in part, dismissing the assault and battery charge, the robbery charge, and two of the strangulation charges. Of the remaining charges, the jury convicted Jones of abduction,

strangulation, and assault and battery as a lesser-included offense of malicious wounding. Jones was sentenced to a term of fifteen years and twelve months, with eight years suspended.[3]

ANALYSIS

I. Expert Testimony

Jones challenges the trial court's rulings allowing Cheek and Ellis-Williams to testify about intimate-partner violence. He argues that: (1) the subject of intimate-partner violence did not necessitate expert testimony because it is a matter within the common knowledge and experience of an average juror; (2) their testimony invaded the province of the jury by commenting on the credibility of a witness; and (3) their testimony was overly speculative.[4]

A trial court's decision to admit or exclude expert testimony is reviewable "under an abuse of discretion standard." *Smith v. Commonwealth*, 78 Va. App. 371, 389 (2023) (quoting *Arch Ins. Co. v. FVCbank*, 301 Va. 503, 515 (2022)). This "standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct[] and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (first alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)).

"[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely

---

[3] Jones was convicted of an unrelated firearm charge. He received an additional sentence for the offense, but that conviction is not before this Court on appeal.

[4] Jones does not challenge Cheek's testimony about her findings during her physical examination of Logan. Likewise, Jones does not assert that the individual qualifications of either Cheek or Ellis-Williams were lacking or that the testimony of either exceeded her expertise.
The Commonwealth suggests that Jones waived the argument that the challenged testimony was speculative by failing to sufficiently raise it below. *See* Rule 5A:18. We assume without deciding that Jones adequately preserved the issue by including it in his pretrial written motion to exclude the expert testimony. *See Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015).

because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

The principles specifically governing admission of expert testimony are well-settled. "The sole purpose of permitting expert testimony is to assist the trier of fact to understand the evidence presented or to determine a fact in issue." *Castillo v. Commonwealth*, 70 Va. App. 394, 438-39 (2019) (quoting *Velazquez v. Commonwealth*, 263 Va. 95, 103 (2002)). An expert witness is allowed to testify in a criminal proceeding only if "the subject matter is beyond the knowledge and experience of ordinary persons, such that the jury needs expert opinion in order to comprehend the subject matter, form an intelligent opinion, and draw its conclusions."[5] Va. R. Evid. 2:702(a)(ii). *See generally Commonwealth v. Allen*, 269 Va. 262, 274 (2005) ("Generally, a witness is qualified to testify as an expert when the witness possesses sufficient knowledge, skill, or experience to make the witness competent to testify as an expert on the subject matter at issue."). This gatekeeping ensures that expert witness testimony assists triers of fact in making factual determinations that go beyond the scope of "common intelligence and ordinary experience." *See Stevens v. Commonwealth*, 72 Va. App. 546, 555 (2020) (quoting *Justiss v. Commonwealth*, 61 Va. App. 261, 271 (2012)); *see also Murray v. Commonwealth*, 71 Va. App. 449, 457 (2020) (noting that "[e]xpert testimony is appropriate to assist triers of fact in those areas where a person of normal intelligence and experience cannot make a competent decision" (alteration in original) (quoting *Utz v. Commonwealth*, 28 Va. App. 411, 423 (1998))).

---

[5] In contrast, lay witnesses can give opinion testimony only if based on their "personal experience[s] or observations." Va. R. Evid. 2:701.

In light of the legal parameters, the assessment is straightforward. "In essence, all that is necessary for a witness to qualify as an expert is that the witness have sufficient knowledge of the subject to give value to the witness's opinion." *Velazquez*, 263 Va. at 103. "[T]he trial judge must determine whether the subject matter of the testimony is beyond a lay person's common knowledge and whether it will assist the trier of fact in understanding the evidence or in determining a fact in issue." *Castillo*, 70 Va. App. at 439 (alteration in original) (quoting *Utz*, 28 Va. App. at 423).

Here, both Cheek and Ellis-Williams testified that generally the responses of victims of intimate-partner violence can be categorized as fight, flight, freeze, or fawn. The term "fawn," a term of art, describes when a person acts "complacent or compliant in order to reduce the traumatic experience that could be occurring." The two experts agreed that although victims of intimate-partner violence do not necessarily display a "typical response," the majority never report it to the authorities. When given a hypothetical situation premised on Logan's testimony, both Cheek and Ellis-Williams testified that even in the presence of a law enforcement officer, a victim of intimate-partner violence may not ask for help.

Cheek and Ellis-Williams's testimony supported the Commonwealth's theory of the case by offering an explanation as to why Logan complied with Jones's demands and did not ask Deputy Leath for help when he came to Jones's sister's house. The witnesses' training, experience, and knowledge on this subject exceeded "that of persons of common intelligence and ordinary experience." *See Stevens*, 72 Va. App. at 555 (quoting *Justiss*, 61 Va. App. at 271); *see also Kilby v. Commonwealth*, 52 Va. App. 397, 411 (2008) (noting the Commonwealth's expert on delayed disclosures clearly had greater knowledge of that subject matter than persons of common intelligence and ordinary experience). We hold, on this record, it was entirely reasonable for the trial court to determine that the expert testimony about the general reactions and coping mechanisms

of victims of intimate-partner violence went beyond common knowledge and would help the jury understand the evidence. *See Stevens*, 72 Va. App. at 555 (upholding the admission of an expert's "general testimony about the circumstances faced by child sexual abuse victims and the reasons why they often delay reporting the abuse"). But this conclusion does not end the analysis of the issues raised here.

In addition, for expert-witness testimony to be admissible, it cannot "opine[] on the credibility of another witness." *Welsh v. Commonwealth*, 304 Va. 118, 137 (2025) (quoting Va. R. Evid. 2:702(b)). Testimony intended to bolster witness credibility "is a comment on an ultimate fact within the province of the jury and must be excluded." *Davison v. Commonwealth*, 18 Va. App. 496, 504 (1994). Although an expert cannot testify on the ultimate fact in issue, such testimony is not precluded merely because it "*tends to prove* an ultimate fact in issue." *See Cruz v. Commonwealth*, 84 Va. App. 703, 720 (2025) (emphasis added) (quoting *Zook v. Commonwealth*, 31 Va. App. 560, 566 (2000)).

Neither Cheek nor Ellis-Williams purported to comment on Logan's credibility or the events at issue. Instead, each witness gave general testimony about common responses to intimate-partner violence and the reasons why a victim might either delay reporting or fail to report abuse at all. Their testimony that a victim may not ask for help even in the presence of a law enforcement officer may have made it more likely that the jury would believe Logan's account, but testimony with that effect is not the same as testimony opining on credibility. The expert testimony "generally provided information" about intimate-partner violence "dynamics that may or may not have existed" in this case. *See id.* at 721 (affirming the admission of expert testimony about child sexual-abuse dynamics). The jury was properly instructed on its function of assessing the credibility of witnesses in accordance with the model jury instructions. *See* 1 Va. Model Jury Instructions—Crim. No. 2.500 (2026). "Since the jury retained ultimate authority to

make a finding as to [the victim's] credibility, [the experts'] testimony did not interfere with the jury's responsibility." *Cruz*, 84 Va. App. at 721.

Finally, expert testimony that is "speculative" is inadmissible. *Welsh*, 304 Va. at 137 (quoting Va. R. Evid. 2:702(b)). An "opinion based on a 'possibility' is irrelevant, purely speculative and hence, inadmissible." *Farmington Country Club, Inc. v. Marshall*, 47 Va. App. 15, 28 (2005) (quoting *Spruill v. Commonwealth*, 221 Va. 475, 479 (1980)). Stated differently, "[e]vidence . . . incapable of affording any reasonable presumption or inference on matters in issue" is not admissible. *Thomas v. Commonwealth*, 82 Va. App. 80, 120 (2024) (en banc). For testimony to be admissible, it "must be brought out of the realm of speculation and into the realm of reasonable probability." *See Pergolizzi v. Bowman*, 76 Va. App. 310, 344 (2022) (quoting *Spruill*, 221 Va. at 479).

Cheek and Ellis-Williams both described the common responses to trauma and delineated four different categories of responses. Cheek based her testimony on her training and experience, which included specialized degrees and "well over a thousand" forensic examinations. Ellis-Williams based her testimony on her education and experience, explaining that she had helped "thousands" of victims of intimate-partner violence. It was reasonable for the trial court to conclude that the two experts based the descriptions of common responses on data and experience and, as such, they were not speculative. And any concern about the probative value of the testimony was a question of weight rather than admissibility. "The proponent of the evidence bears the burden of establishing . . . the facts necessary to support its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (alteration in original) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013)). However, "[o]nce th[at] threshold for proving admissibility has been met, any gaps in the evidence are relevant to the trier of fact's assessment of its weight rather than its admissibility." *Id.* at 122-23.

For these reasons, the trial court acted within its discretion by admitting the expert testimony about intimate-partner violence.[6]

## II. Sufficiency of the Evidence of Abduction

Jones contends the evidence was insufficient to support his abduction conviction because the Commonwealth failed to prove that he detained Logan through force or intimidation.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "[I]t is not for th[e appellate c]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (third alteration in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

Accordingly, a reviewing court considers the evidence in the light most favorable to the Commonwealth, the prevailing party at trial, and accords it the benefit of all inferences reasonably drawn from the evidence. *Garrick*, 303 Va. at 182. "An appellate court may neither find facts nor draw inferences that favor the losing party that the factfinder did not. This remains so even when the factfinder *could* have found those facts or drawn those inferences" but chose "not to do so." *Id.*

---

[6] In light of our holding, we do not address the Commonwealth's alternative argument that any error in admitting the expert testimony was harmless. *See generally Commonwealth v. Kartozia*, 304 Va. 321, 336 & n.* (2025) (applying best-and-narrowest-ground principles to avoid addressing a harmless error claim after concluding that the circuit court's ruling on the merits was not error).

A person commits an abduction if, "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of h[er] personal liberty." Code § 18.2-47(A); *see Brown v. Commonwealth*, 74 Va. App. 721, 730 (2022). Under the statute, "a defendant 'detains' a victim by having that victim 'remain in a certain location, or even in a certain position[,]' through the use of force, intimidation, or deception." *Commonwealth v. Herring*, 288 Va. 59, 74 (2014) (quoting *Burton v. Commonwealth*, 281 Va. 622, 628 (2011)). "Intimidation is defined as '[u]nlawful coercion; extortion; duress; putting in fear.'" *Brown*, 74 Va. App. at 731 (alteration in original) (quoting *Bivins v. Commonwealth*, 19 Va. App. 750, 752 (1995)). "[A] victim suffers fear of bodily harm in the abduction context if the defendant imposes 'psychological pressure on [the victim] who, under the circumstances, is vulnerable and susceptible to such pressure.'" *Id.* at 732 (second alteration in original) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985)) (noting that the Commonwealth does not need to prove the defendant expressly threatened to do bodily harm). And the offense "does not contain a temporal requirement, which means a victim can be detained under the statute even if only for the briefest of moments." *Id.* at 732-33.

The record, viewed under the proper legal standard, demonstrates the evidence proved the requisite intimidation. When Jones and Logan arrived at the motel, Jones took her car keys and instructed her to go into his motel room. During the ensuing argument, Logan declared her intention to leave. Rather than letting her go, Jones said, "[B]itch, you're not going anywhere." Frightened by Jones's demeanor, Logan complied with his orders that she remain and remove all of her clothing except her undergarments. Jones then threatened to "get" Logan if she did not answer his questions as to whether she was a prostitute. A reasonable trier of fact could find from this evidence that, before he ever struck her, Jones used intimidation to coerce the

vulnerable Logan into remaining at the motel room despite her desire to leave. As a result, we hold that the evidence supports the jury's verdict finding Jones guilty of abduction. *See Epps v. Commonwealth*, 66 Va. App. 393, 403 (2016) (noting that although the evidence proved a "temporal connection" between the assault and battery and the abduction, the two offenses "did not occur simultaneously"), *aff'd*, 293 Va. 403 (2017); *Smith v. Commonwealth*, 56 Va. App. 711, 723-24 (2010) (holding that the defendant's deception of the victim in luring her to his bedroom proved abduction and the subsequent attempted rape was a separate crime).

### III. The Amount of Force or Intimidation Used

Jones alternatively suggests that the trial court erred in denying his motion to strike the abduction charge because any force or intimidation used to detain Logan was merely incidental to the other offenses.

The issue of "whether the detention established by the evidence is 'the kind of restraint which is *an intrinsic element*'" of a crime such as assault and battery or strangulation "is a question of law to be determined by the court." *Lawlor*, 285 Va. at 229 (quoting *Brown v. Commonwealth*, 230 Va. 310, 314 (1985) (emphasis added)). Consequently, we review this overarching issue de novo. "However, because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the historical facts of each case." *Vay v. Commonwealth*, 67 Va. App. 236, 253 (2017) (quoting *Hoyt v. Commonwealth*, 44 Va. App. 489, 496 n.4 (2004)). So we defer to findings of historical fact that have support in the record. *See id.*

"[T]he General Assembly 'did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense.'" *Id.* at 250 (quoting *Hoyt*, 44 Va. App. at 492); *see also Lawlor*, 285 Va. at 224-25 (noting that this principle stems from double-jeopardy protections). Rather, for restraint

- 11 -

to be punishable as a separate abduction offense, the detention must be "separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime." *Vay*, 67 Va. App. at 250 (quoting *Brown*, 230 Va. at 314).

The Supreme Court of Virginia has made clear that in such cases, "[t]he only issue . . . is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." *Lawlor*, 285 Va. at 225. The focus is "not on whether the restraint was merely useful to perpetrating a detention-plus crime—but whether the restraint was 'intrinsic' to or 'inherent' in" the other crime. *Pryor v. Commonwealth*, 48 Va. App. 1, 6 (2006) (first quoting *Cardwell v. Commonwealth*, 248 Va. 501, 511 (1994); and then quoting *Bell v. Commonwealth*, 22 Va. App. 93, 97 (1996); and *Coram v. Commonwealth*, 3 Va. App. 623, 626 (1987)). In conducting this analysis, a court may consider the length of the detention, the timing of the abduction and the other crime, the connection between the abduction and the other crime, and the additional danger to the victim caused by the detention. *Wiggins v. Commonwealth*, 47 Va. App. 173, 183 (2005).

The question in this case is whether Jones detained Logan only to the extent necessary to strangle and hit her. The record makes clear that temporally, Jones's acts of physical abuse were only a fraction of the many hours that Logan felt helpless to leave. As one example, when Jones made the mostly unclothed Logan stand outside the motel for five to ten minutes as he stood beside her, that detention was entirely separate and apart from any necessary to accomplish the strangulation or assault and battery. During the hours Jones kept Logan captive, he repeatedly threatened to hurt or kill her, and he threatened her son. Understandably, Logan feared for her own well-being as well as that of her child. The hours-long detention combined with the repeated threats of harm was considerably more than the minimum necessary to accomplish the strangulation and assault.

Consequently, the trial court correctly held that Jones's abduction of Logan was not incidental to or inherent in the other offenses.

CONCLUSION

The trial court did not abuse its discretion by admitting the expert witness testimony. And we hold that the evidence was sufficient to prove that Jones used force or intimidation to detain Logan. Finally, the use of such force or intimidation was more than the minimum necessary to accomplish the other offenses. The convictions are therefore affirmed.

*Affirmed.*