PRESENT: Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Carrico, S.J.

KARYN LYNN ALGER

OPINION BY
v.  Record No. 030848            JUSTICE G. STEVEN AGEE
                                   January 16, 2004
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Karyn Lynn Alger ("Alger") was convicted in the Circuit Court of Page County for unlawfully possessing a firearm after having been convicted of a felony in violation of Code § 18.2-308.2.  She was sentenced to five years in prison with three years suspended.

On appeal, Alger does not dispute that she was a convicted felon or that she possessed a firearm in her home on the date of the offense.  Instead, Alger contends, as she did in the trial court and the Court of Appeals, that Code § 18.2-308.2, as amended and reenacted by the General Assembly, permitted her to possess a firearm within her residence.  The Commonwealth responds that Code § 18.2-308.2 allowed Alger to possess a stun weapon or taser in her residence, but not a firearm.

The issue before the Court is whether, at the time of the offense, Code § 18.2-308.2 permitted Alger to possess a firearm in her home.  For the reasons that follow, we answer that inquiry in the negative and will therefore affirm Alger's conviction.

I.

In the 2001 session of the General Assembly, Code § 18.2-308.2 was amended by adding a subclause (b) to the first sentence of subsection A.  As amended in 2001 and in force on the date of the offense, the statute provided in pertinent part:

> It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any *(a) firearm or (b) stun weapon or taser as defined in § 18.2-308.1 except in such person's residence or the curtilage thereof* or to knowingly and intentionally carry about his person, hidden from common observation, any weapon described in *subsection A* of § 18.2-308.

Code § 18.2-308.2(A) (as amended 2001) (emphasis on amended language).[1]

---

[1] For reasons unknown, when the 2001 version of the Code of Virginia was printed by the contract publisher, Michie Law Publishers, a comma appeared in Code § 18.2-308.2(A) between the first reference to "§ 18.2-308.1" and the word "except."  The publisher subsequently issued an errata sheet which corrected the error by removing the erroneous comma and showing the statute in conformity with the Acts of Assembly.  See Acts, 2001, cc. 811, 854 (showing enactment by the General Assembly with no comma).  However, on September 7, 2001, the date of the charged offense, the publisher's version of the cumulative supplement to the Code of Virginia reflected the erroneous comma in the text of Code § 18.2-308.2(A).

Alger does not contend on appeal that the uncorrected cumulative supplement pamphlet for 2001, erroneously published with a comma before the "except" clause, has any legal efficacy.  We consider only the language actually adopted by the General Assembly, which did not have a comma before the "except" clause.

The General Assembly subsequently amended Code § 18.2-308.2 in 2002 and 2003.  The most recent version of Code § 18.2-308.2(A) states in pertinent part that:

It is uncontested that on September 7, 2001, Alger was a convicted felon and intentionally possessed a shotgun inside her home. The trial court determined that the clause "except in such person's residence or the curtilage thereof" (the "except" clause) only modified "stun weapon or taser as defined by § 18.2-308.1," and not "firearm." Accordingly, the trial court rejected Alger's reading of Code § 18.2-308.2(A) that the "except" clause modified "firearm" so as to permit a convicted felon to possess a firearm in her residence. Alger was then convicted of the offense charged.

On review, the Court of Appeals, citing Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001), reviewed the statute "in its entirety, rather than by isolating particular words or phrases." Alger v. Commonwealth, 40 Va. App. 89, 93, 578 S.E.2d 51, 53 (2003). The Court of Appeals rejected Alger's interpretation of the statute finding that it would "yield an absurd result." Id. We granted Alger this appeal.

_____

It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or stun weapon or taser as defined by § 18.2-308.1 or to knowingly and intentionally carry about his person, hidden from common observation, any weapon described in subsection A of § 18.2-308. However, such person may possess in his residence or the curtilage thereof a stun weapon or taser as defined by § 18.2-308.1.

3

II.

Alger argues that Code § 18.2-308.2 "appears on its face to permit a convicted felon to possess firearms and stun weapons/tasers, within her own residence."  In support of this interpretation of the statute, Alger asserts that conventions of legal drafting require items tabulated in an enumeration to be of the same class and that words preceding or following the enumeration shall apply to each item in the series.  Therefore, in Alger's view, the "except" clause modifies both "(a) firearm or (b) stun weapon or taser." Alternatively, Alger asserts that Code § 18.2-308.2, as a penal statute, must be strictly construed against the Commonwealth and in her favor to resolve any ambiguity.  Further, Alger argues the Court of Appeals improperly considered the legislative history of the statute without expressly finding the statute to be ambiguous.

The Commonwealth disagrees with Alger's interpretation of the amended language of Code § 18.2-308.2(A) and argues the "except" clause only modifies subclause (b) concerning stun weapons and tasers.

Although our analysis differs from that of the Court of Appeals, we reach the same result.

---

Code § 18.2-308.2(A) (as amended 2003); Acts, 2003 c. 110; Acts, 2002 c. 362.

4

III.

In reviewing the language of Code § 18.2-308.2, we adhere to the familiar principle that

> [u]nder basic rules of statutory construction, we determine the General Assembly's intent from the words contained in the statute. When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated.

Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003) (citations omitted). Prior to the 2001 amendments to Code § 18.2-308.2, it is clear the obvious intent of that statute was to prohibit persons convicted of felonies from possessing firearms. See e.g., Armstrong v. Commonwealth, 263 Va. 573, 583, 562 S.E.2d 139, 144 (2002) ("the legislative intent of Code § 18.2-308.2 is to prohibit convicted felons from possessing 'any firearm' "). The General Assembly added language to Code § 18.2-308.2 in 2001 that expanded the proscription against possessing firearms by a convicted felon to include stun guns or tasers. See Acts, 2001 cc. 811 and 854. Concurrently with the addition of this language, the General Assembly also added the exemption for possession in the home or surrounding curtilage.[2]

---

[2] We mention the legislative history of Code § 18.2-308.2 only to provide context to the amended language at issue here. As it is not the basis of our interpretation of the statute we need not consider Alger's argument in that regard.

5

While it is true that penal statutes must be strictly construed against the Commonwealth in criminal cases, "we will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein."  Armstrong, 263 Va. at 581, 562 S.E.2d at 144.  To avoid an "unreasonably restrictive" interpretation of the statute, we may employ established rules of statutory construction.  One such rule, sometimes referred to as the last antecedent doctrine, is particularly applicable here and can be summarized as follows:

> Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.  The last antecedent is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.'  Thus a proviso usually is construed to apply to the provision or clause immediately preceding it.

2A Norman J. Singer, Sutherland on Statutory Construction § 47.33 (6th rev. ed. 2000); see also Barnhart v. Thomas, ___ U.S. ___, ___, 124 S.Ct. 376, 380 (2003) (explaining and applying "the grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows . . . .");  Nobelman v. American Savings Bank, 508 U.S. 324, 330

(1993) (noting that construction of a statute according to the last antecedent rule is "quite sensible as a matter of grammar").

In the case at bar, the phrase "stun weapon or taser as defined in § 18.2-308.1" is the last antecedent before the "except clause."  As such, "stun weapon or taser" is the referential and qualifying phrase.  Thus, according to the last antecedent rule of construction, the "except" clause modifies only "stun weapon or taser" and not "firearm."  See e.g., Keene v. Travelers Indemnity Company of Illinois, 73 F. Supp. 2d 638, 641 (W.D. Va. 1999) (employing the last antecedent doctrine to interpret an insurance contract); Sun Valley Foods Co. v. Ward, 596 N.W.2d 119, 123 (Mich. 1999) (employing last antecedent doctrine to interpret a statute).  The wording of the amendment to the statute further reinforces this reading because the General Assembly differentiated between "firearms" and "stun weapons or taser" by inserting the "a" and "b" designations before those terms.

Alger argues that "[w]hen items are tabulated in an enumeration, the conventions of legal drafting provide that the enumerated items must all be of the same class and that the words preceding and following the enumeration shall apply to each item in the series."  Inspection of the source material Alger cites for this proposition, however, makes clear that the statutory language of Code § 18.2-308.2 is not what is contemplated as items "tabulated in an enumeration." See generally Reed Dickerson, The

7

Fundamentals of Legal Drafting § 6.3 (1965); see e.g., Code

§ 18.2-308.7 (items tabulated in an enumeration).[3]

Moreover, had the General Assembly intended to permit

convicted felons to possess a firearm in their residence it would

have done so.  We "assume that the legislature chose, with care,

the words it used when it enacted the relevant statute."  Barr v.

Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672,

674 (1990).

For these reasons it is evident that Code § 18.2-308.2 did

not permit Alger, as a convicted felon, to possess a firearm

---

[3] Reed Dickerson, The Fundamentals of Legal Drafting § 6.3 at 86 (1965):

The following provision exemplifies the sentence form of tabulation:
Any person punishable under this chapter who:
(1)  commits an offense punishable under this chapter,  or aids, abets, counsels, commands, or procures its commission; or
(2)  causes an act to be done that if directly performed by him would be punishable under this chapter;
is a principal.

The following provision exemplifies the list form of tabulation:
The Trustee may buy any of the following:
(1)  United States Government bonds.
(2)  State bonds.
(3)  Municipal bonds.
(4)  Preferred stock.
(5)  Common stock listed on the New York Stock Exchange.

within her home, the curtilage thereof or anywhere else.  We will therefore affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.
