PRESENT:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
          Agee, JJ., and Russell, S.J.

COMMONWEALTH OF VIRGINIA

v.  Record No. 061015   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                   April 20, 2007
RONALD MILLER


           FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                 Frederick G. Rockwell, III, Judge


     In this appeal, we consider whether the circuit court erred

in qualifying a witness to testify as an expert under the

Sexually Violent Predators Act (the Act), Code §§ 37.2-900

through -920.  We also consider whether the circuit court erred

in concluding that the Commonwealth failed to prove by clear and

convincing evidence that the defendant is a sexually violent

predator as defined by the Act.

     In 1994, Ronald Miller was convicted in the Circuit Court

of Chesterfield County (circuit court) of forcible sodomy for

conduct that occurred several years earlier.  Miller received a

sentence of 55 years' imprisonment, with 45 years suspended.

     While incarcerated for his 1994 conviction, Miller was

convicted in the circuit court of two charges of forcible sodomy

for conduct that occurred in October 1992.  The circuit court

sentenced Miller for these convictions to a term of 30 years'

imprisonment, with 20 years suspended.

Before Miller's scheduled release from incarceration in January 2005, the Director of the Department of Corrections notified the Department's Commitment Review Committee (CRC) that Miller qualified for review under the Act because he had been convicted of a sexually violent offense and had received a score of four on the Rapid Risk Assessment for Sexual Offender Recidivism (RRASOR).[1]  See former Code § 37.1-70.4(C) (Cum. Supp. 2005).  The CRC completed an assessment of Miller and referred his case to the Office of the Attorney General.

The Attorney General reviewed the CRC's assessment, the results of Miller's mental health examination, institutional history, treatment record, and criminal record.  Based on this information, the Attorney General determined that Miller qualified as a sexually violent predator under the Act.  The Attorney General (the Commonwealth) filed a petition in the

---

[1] The Act was codified in §§ 37.1-70.4 through –70.19 until October 1, 2005, when it was repealed and recodified in §§ 37.2-900 through –919.  Further amendments were made to these provisions in 2006.  However, neither party contends that the reformatting of these provisions has changed the operative terms and concepts that are dispositive in this appeal.  Prior to Miller's release from prison, the predecessor version of Code § 37.2-903 provided that prisoners incarcerated for a sexually violent offense were to be assessed and evaluated based on a testing instrument known as the RRASOR, which is used in predicting sex offender recidivism.  Under the then-applicable provision, prisoners who received a score of four or more on the RRASOR were to be referred to the CRC for further assessment.  See former Code § 37.1-70.4 and former § 37.2-903(C) (Interim Supp. 2005).  For convenience of reference, the current Code references are used in the remainder of this opinion.

2

circuit court requesting that Miller be civilly committed pursuant to the Act.

The circuit court conducted a bench trial in which the expert witnesses presented by both parties diagnosed Miller with pedophilia. The parties' witnesses disagreed, however, regarding Miller's risk of recidivism and whether Miller met the definition of a sexually violent predator under the Act.

The Commonwealth presented the testimony of Anita L. Boss, a licensed clinical psychologist who qualified as an expert in forensic psychology, including sex offender evaluation, risk assessment, and treatment. Dr. Boss completed a forensic evaluation of Miller, in which she conducted a clinical interview, gathered information from family members, and administered certain psychological tests.

Dr. Boss testified that Miller had a pattern of sexual interaction with boys who were between four and five years old. She stated that Miller originally reported having sexually abused five victims but that during one evaluation interview, Miller estimated that he might have sexually abused various children a total of 100 times. Dr. Boss also stated that Miller had a practice of "grooming" his child victims, using games and other methods to engage the victims' interests.

Dr. Boss testified that when Miller was 14 or 15 years of age, he sexually abused two of his siblings, twins, one male and

3

one female, who were then four or five years old.  According to Dr. Boss, Miller reported that he encouraged the twins to play a "lollipop" game with his penis and had them perform oral sodomy on him.

Dr. Boss stated that Miller reported he engaged another five year old boy in similar conduct, during a period when his mother was providing childcare services for the boy.  Miller also related to Dr. Boss an incident that occurred when Miller was 18 or 19 years old, involving another young boy for whom Miller's mother was providing childcare services.  Dr. Boss stated that Miller described putting his hand on the young boy's groin area while the boy was sleeping.  Miller also told Dr. Boss that he masturbated in private after abusing his child victims, which suggested to Dr. Boss that Miller fantasized about the victims.

During her evaluation, Dr. Boss learned that Miller had worked as a public school bus driver and had transported children with special needs.  In addition to that job, Miller had worked at an amusement park for a few months one summer.  Dr. Boss concluded that Miller's employment history was significant because he chose employment that placed him in direct proximity to children.

Miller was 28 years old when he committed the offense that resulted in his first conviction.  During this incident, Miller

escorted a young boy at his mother's day care center to use the bathroom. While in the bathroom, Miller had the child perform oral sodomy on Miller.

Dr. Boss testified that Miller's later conviction for an offense that occurred in 1992 involved another five year old boy whom Miller was babysitting. According to Dr. Boss, Miller reported that he was sitting on a couch with the child watching a movie when he felt a strong impulse to touch the child's thigh, and that his hand had a "mind of its own." Miller eventually had the child perform oral sodomy on him. Dr. Boss found Miller's explanation significant because it showed denial on Miller's part, blaming his hand rather than himself for his actions.

Miller told Dr. Boss that he considered asking for help, but that he was concerned people would think he was "crazy." He described himself as a homosexual who was afraid to disclose his sexuality to his family and was afraid to seek the company of adult men. However, Miller would not acknowledge to Dr. Boss that he was sexually interested in children.

Addressing Miller's behavior while incarcerated, Dr. Boss testified that Miller and another male inmate were found in a bathroom engaging in oral sodomy. At the time of this incident, Miller said that the sexual conduct was consensual, but he later told Dr. Boss that he had been sexually assaulted.

Dr. Boss further testified that Miller had completed a "sexual offender awareness program" during his incarceration. At the time Dr. Boss interviewed Miller, Miller was enrolled in a sex offender recidivism treatment program (SORT program) and had participated in that program at a "moderate" level.

Dr. Boss diagnosed Miller with pedophilia, non-exclusive type, based on Miller's attraction to male children and male adults. She testified that according to the psychiatric definition of pedophilia, a person who has pedophilia 1) has "[r]ecurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activities with prepubescent . . . children," 2) has acted on these urges, causing distress or interpersonal difficulties, and 3) is at least 16 years old or five years older than the victim. Dr. Boss concluded that Miller's diagnosis of pedophilia satisfied the Act's statutory definition of "mental abnormality," and the separate definition of that term generally used by clinical psychologists and psychiatrists. See Code § 37.2-900.

Dr. Boss also diagnosed Miller with a personality disorder, not otherwise specified, and stated that Miller demonstrated avoidant, dependent, and depressive behavior. According to Dr. Boss, the personality disorder traits exhibited by Miller show a "moderate correlation" with a risk of committing future

6

offenses.  Dr. Boss added that Miller's personality disorder might prevent him from seeking treatment.

Dr. Boss administered to Miller a testing instrument known as the Static-99, which is used to predict sex offender recidivism.[2]  Miller received a score of four on that test.  In determining his score, Dr. Boss concluded that Miller did not have any victims who were "strangers" to him.

Dr. Boss explained that Miller's score placed him at a "medium-high" risk assessment level, with a 26 percent chance of recidivist behavior within five years, and a 31 percent chance of such behavior within ten years.  Dr. Boss acknowledged, however, that the Static-99 provides another table of risk percentages that takes into consideration a person's age, in addition to his test score.  According to Dr. Boss, when Miller's age of 42 was considered, the corresponding risk of recidivism was 13.8 percent, with a margin of error of eight percent.

In addition, Dr. Boss conducted an assessment known as the Clinical Judgment to Sexual Violence Risk Assessment 20 (SVR-20), which considers both risk factors and treatment factors.  Dr. Boss' assessment of Miller under the SVR-20 indicated that Miller's deviant sexual interest in children correlated "very

---

[2] Use of the Static-99 test is now specifically mandated by the Act.  See Code § 37.2-903(C).

7

highly" with a risk of committing future sex offenses. She further observed that Miller had additional risk factors for recidivism, including an escalating pattern of deviant sexual behavior, a lack of social support, and potential employment problems.

Dr. Boss also testified that when a sex offender fails to comply with the conditions and requirements of a treatment program, the risk of committing future sexual offenses increases. Dr. Boss concluded that Miller met the Act's definition of a sexually violent predator.

The Commonwealth also presented the testimony of Maria S. Stransky, a certified sex offender treatment provider and the assistant director of the SORT program at the Brunswick Correctional Center. Stransky testified that Miller began the SORT program in July 2001 but was terminated from the program in February 2005 because he did not progress in his treatment plan.

Stransky stated that she has completed hundreds of actuarial risk assessments during the course of her career. She evaluated Miller on the Abel Assessment, a test given to all SORT participants to determine their sexual interests and any changes in their sexual interests during treatment. Based on Miller's responses on the Abel Assessment, Stransky diagnosed Miller with pedophilia.

Stransky administered to Miller the RRASOR, on which he received a score of four. Stransky also administered the Static-99 test, assigning Miller one point for assaulting a victim who was a "stranger" to him. She could not remember, however, which of Miller's victims could be classified as a "stranger."

Stransky testified that if Miller had no victims who were "strangers" to him, he would have received a score of three on the Static-99, which placed Miller in the "medium low" risk of recidivism. She also stated that a score of three on the Static-99 correlated with a 12 percent risk of recidivist behavior within five years. After Stransky's testimony, the Commonwealth rested its case.

Miller presented Dr. Eileen P. Ryan, a licensed clinical psychiatrist, to testify as an expert in the field of forensic psychiatry. Dr. Ryan is the medical director of the Institute of Law, Psychiatry, and Public Policy at the University of Virginia. She has received specialized training in the evaluation and treatment of sex offenders and has been certified in Virginia since 1999 to treat sex offenders although she does not treat them as part of her employment.

The Commonwealth objected to the qualification of Dr. Ryan as an expert contending, among other things, that Dr. Ryan was not "skilled in treatment" of sex offenders as required by Code

§ 37.2-904, because she did not treat them as a part of her practice but was merely certified to do so.  The circuit court sustained the Commonwealth's objection with regard to the issue of treatment but, over the Commonwealth's objection, admitted Dr. Ryan as an expert on the diagnosis and risk assessment of sex offenders.

Dr. Ryan testified that she evaluated Miller using actuarial instruments and clinical techniques.  Dr. Ryan concluded that Miller is a pedophile, which she indicated is a condition that meets the psychiatric definition of a "mental abnormality."  Dr. Ryan also diagnosed Miller with avoidant personality disorder with dependent traits and stated that this diagnosis satisfied the psychiatric definition of a personality disorder.  Dr. Ryan concluded, however, that Miller does not suffer from a "mental abnormality" or "personality disorder" within the meaning of the Act, which provides different definitions of these terms from the psychiatric definitions.  See Code § 37.2-900.

Dr. Ryan stated that several factors lower Miller's risk for recidivism, including the fact that he is not antisocial, is not psychopathic, and does not abuse drugs or alcohol.  Dr. Ryan testified that Miller's two primary risk factors for recidivism were his diagnosis as a pedophile and his previous access to children.

In a letter opinion, the circuit court held that the Commonwealth did not meet its burden of proving that Miller has a mental abnormality or personality disorder as defined by the Act, or that he is likely in the future to engage in sexually violent acts. In its analysis, the circuit court discussed several factors. The circuit court observed that Miller's participation in the SORT program was rated as "moderate," and stated that there was insufficient evidence to show that his failure to complete the program affected his likelihood of recidivism. The circuit court also noted that Dr. Boss appeared confused regarding Miller's conviction dates and that her apparent uncertainty about these dates could have impacted Dr. Boss' scoring of the Static-99 test.

Addressing Miller's potential for recidivist behavior, the circuit court stated, "Miller never sought out his victims. Rather, all of his victims were children who he was familiar with and who were placed in his care, thus giving him an easy opportunity to offend." The circuit court concluded that because Miller is now a convicted sex offender, his opportunities to care for young boys "should decrease or become non-existent." The circuit court also found that there was no evidence demonstrating that Miller was likely to "begin seeking out victims."

11

The circuit court additionally held that even if it had not considered Dr. Ryan's testimony, the Commonwealth's evidence was insufficient to establish that Miller is a sexually violent predator as defined by the Act. The circuit court based its rationale in part on Dr. Boss' confusion about the chronology of Miller's offense history and on the fact that Stransky acknowledged an error in her scoring of the Static-99 test. The circuit court entered final judgment holding that Miller is not a sexually violent predator as defined by the Act.

On appeal, the Commonwealth first argues that the circuit court erred in qualifying Dr. Ryan as an expert witness. The Commonwealth asserts that Code § 37.2-904(B) establishes a two-part standard under which a potential expert witness must demonstrate skill in both the diagnosis and the treatment of certain specified mental conditions. The Commonwealth contends that the circuit court improperly disregarded the "treatment" component of this two-part standard by admitting Dr. Ryan to testify concerning the diagnosis of mental abnormalities and disorders, without requiring her also to show that she was skilled in the treatment of those conditions.

In response, Miller argues that the circuit court did not err in qualifying Dr. Ryan as an expert witness under the statute. According to Miller, the plain language of Code § 37.2-904(B) did not require that Dr. Ryan be skilled in the

treatment of the specified mental conditions before she could render a diagnosis and an assessment of his risk of committing future offenses.  We disagree with Miller's arguments.

A court's admission of expert testimony is a matter committed to the sound discretion of the trial judge, and we generally will disturb a decision of this nature only when the court has abused its discretion.  Atkins v. Commonwealth, 272 Va. 144, 153, 631 S.E.2d 93, 97 (2006); Tarmac Mid-Atlantic, Inc. v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995).  However, when a statute designates express requirements for the qualification of an expert witness, the witness must satisfy those statutory requirements before testifying as an expert.  Atkins, 272 Va. at 153, 631 S.E.2d at 97; Commonwealth v. Allen, 269 Va. 262, 273, 609 S.E.2d 4, 11 (2005); see Hinkley v. Koehler, 269 Va. 82, 87, 606 S.E.2d 803, 806 (2005); Perdieu v. Blackstone Family Practice Ctr., Inc., 264 Va. 408, 419, 568 S.E.2d 703, 709 (2002); Sami v. Varn, 260 Va. 280, 283-86, 535 S.E.2d 172, 174-75 (2000).

An expert may assist a defendant in civil commitment proceedings under the Act on subjects relating to the defendant's mental health.  Code § 37.2-907(A).  Such an expert "shall be a licensed psychiatrist or a licensed clinical psychologist who is skilled in the diagnosis and treatment of

13

mental abnormalities and disorders associated with sex offenders and who is not a member of the CRC."  Id.

We determine the meaning of this language from the express words contained in the statute.  Washington v. Commonwealth, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006); Alger v. Commonwealth, 267 Va. 255, 259, 590 S.E.2d 563, 565 (2004); Tucker v. Commonwealth, 268 Va. 490, 493, 604 S.E.2d 66, 68 (2004); Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003); Commonwealth v. Diaz, 266 Va. 260, 264, 585 S.E.2d 552, 554 (2003).  When statutory language is unambiguous, we are bound by the plain meaning of that language and may not give the words a construction that amounts to holding the General Assembly did not mean what it actually stated.  Gunn v. Commonwealth, 272 Va. 580, 587, 637 S.E.2d 324, 327 (2006); Alger, 267 Va. at 259, 590 S.E.2d at 565; Tucker, 268 Va. at 493, 604 S.E.2d at 68; Williams, 265 Va. at 271, 576 S.E.2d at 470; Caprio v. Commonwealth, 254 Va. 507, 511-12, 493 S.E.2d 371, 374 (1997).

We conclude that the requirement in Code § 37.2-907(A), that an expert be "skilled in the diagnosis and treatment" of the specified mental conditions, is plain and unambiguous. Because this statutory requirement is stated in the conjunctive, any witness seeking to qualify as an expert under the statute must demonstrate skill in both the diagnosis and the treatment

14

of the stated mental conditions.  By mandating that an expert demonstrate skill in both these areas, the General Assembly effectively has made skill in both capacities a threshold requirement for a witness to render an expert opinion whether a defendant is a sexually violent predator as defined by the Act. See Code §§ 37.2-904(B) and -907(A).

In the present case, it is undisputed that Dr. Ryan did not meet the skill in "treatment" requirement of Code § 37.2-907(A), but had only demonstrated skill under the "diagnosis" component of the two-part statutory standard.  Thus, we conclude that the circuit court erred in qualifying Dr. Ryan to testify as an expert under the mandatory two-part standard of Code § 37.2-907(A).

The circuit court's error in admitting Dr. Ryan's testimony requires us to disregard her testimony, including the results of the tests she conducted, in our analysis of the sufficiency of the evidence.  Therefore, we restrict our analysis to the remaining evidence in the case, which was presented by the Commonwealth.  We turn to consider the circuit court's holding that the Commonwealth's evidence, standing alone, was insufficient to meet the Commonwealth's burden of proof.

The Commonwealth challenges the circuit court's holding, contending that the testimony of Dr. Boss and Stransky satisfied the Commonwealth's proof burden as a matter of law.  The

Commonwealth also challenges the circuit court's stated rationale, particularly the court's finding that Miller was unlikely to commit future offenses of this nature because, as a convicted sex offender, his access to "young boys" should decrease. The Commonwealth asserts that the evidence does not support this finding, because Miller's status as a convicted sex offender is not a factor that lowers his risk of recidivism.

In response, Miller argues that the circuit court did not err in determining that the Commonwealth's evidence, standing alone, was insufficient to establish by clear and convincing evidence that Miller is a sexually violent predator. In support of his argument, Miller relies on the circuit court's conclusion that Dr. Boss appeared confused on the subject of Miller's previous offenses, and that Stransky incorrectly computed the score of one of the actuarial tests she administered to Miller. Miller also observes that the circuit court considered his level of participation in the SORT program and his opportunity and likelihood for recidivist behavior.

In reviewing the sufficiency of the evidence on appeal, we apply an established standard of review. We will approve the circuit court's holding unless it is plainly wrong or without evidentiary support. See Code § 8.01-680.

At trial, the Commonwealth was required to prove by clear and convincing evidence that Miller is a sexually violent

16

predator.  See Code § 37.2-908(C); Ellison v. Commonwealth, 273 Va. 254, 260, 639 S.E.2d 209, 213 (2007); Shivaee v. Commonwealth, 270 Va. 112, 122, 613 S.E.2d 570, 576, cert. denied, ___ U.S. ___, 126 S.Ct. 626 (2005); Allen, 269 Va. at 275, 609 S.E.2d at 12; McCloud v. Commonwealth, 269 Va. 242, 256, 609 S.E.2d 16, 23 (2005).  Clear and convincing evidence is the degree of proof that affords the fact finder a firm belief or conviction concerning the allegations that a party seeks to establish.  This evidentiary standard describes an intermediate level of proof that exceeds the "preponderance" standard, but does not reach the level of certainty required in criminal cases of "beyond a reasonable doubt."  Grubb v. Grubb, 272 Va. 45, 54, 630 S.E.2d 746, 751-52 (2006); Allen, 269 Va. at 275, 609 S.E.2d at 13.

The term "sexually violent predator" is defined in Code § 37.2-900.  To satisfy that definition, the Commonwealth was required to prove that 1) Miller was convicted of a sexually violent offense; and 2) due to a mental abnormality or personality disorder, Miller finds it difficult to control his predatory behavior, making him likely to engage in sexually violent acts in the future.  See Code § 37.2-900; Shivaee, 270 Va. at 123, 613 S.E.2d at 576; McCloud, 269 Va. at 257, 609 S.E.2d at 24.

17

The evidence was undisputed that Miller's convictions of forcible sodomy qualify as sexually violent offenses within the meaning of the Act.  See Code § 37.2-900.  The evidence also was undisputed that Miller is a pedophile.

Dr. Boss' testimony provided evidence that Miller's diagnosis of pedophilia satisfied the Act's statutory definition of "mental abnormality."  Her testimony further showed that although Miller initially reported having sexually abused five young boys, Miller later estimated he may have sexually abused young boys as many as 100 times.  Paradoxically, however, Miller refused to acknowledge that he was sexually attracted to children.

Dr. Boss' testimony further showed that Miller's personality disorder might prevent him from seeking treatment for his problems, and that his personality disorder traits showed a "moderate correlation" with the risk of committing future offenses.  Her testimony also established that Miller's termination from the SORT treatment program increased his risk of committing future offenses.  Based on all these considerations, Dr. Boss concluded that Miller met the Act's definition of a sexually violent predator.

Although Dr. Boss and Stransky acknowledged that there were variables that could have affected the results of certain actuarial risk assessments they administered to Miller, the

18

results reported by Dr. Boss and Stransky on these and other risk assessments nevertheless indicated that Miller posed a significant risk of committing future offenses. In particular, the results of the SVR-20, performed by Dr. Boss, showed that Miller's deviant sexual interest in children correlated "very highly" with a risk of committing future offenses.

We hold that the above evidence, as a matter of law, provided clear and convincing proof that Miller is a sexually violent predator as defined by the Act. Our conclusion is not altered by the circuit court's finding that "[n]ow that Mr. Miller is a convicted sex offender his opportunities to care for young boys should decrease or become non-existent." That conclusion appears largely to have been based on Dr. Ryan's testimony, which is no longer part of the record that we consider. To the extent that this finding was not based on Dr. Ryan's testimony, the finding was speculative in nature.

Our view of the evidence also is not altered by the circuit court's additional finding that "[n]o evidence was offered to indicate that Mr. Miller will have easy access to more potential victims after his release or to indicate that he is likely to begin seeking out victims." The Commonwealth was not required to prove that Miller would have "easy" access to future victims, or that Miller would "seek out" victims who were "strangers." Instead, the Commonwealth had the burden of proving that because

19

of a mental abnormality or personality disorder, Miller was likely to commit sexually violent offenses.

Because the Commonwealth proved, as a matter of law, that Miller is a sexually violent predator as defined by the Act, the Commonwealth is entitled have final judgment entered to that effect.  The case must be remanded to the circuit court, however, for further determination under the Act whether Miller should be fully committed or placed on conditional release.  See Code § 37.2-908(D).

For these reasons, we will reverse the circuit court's judgment, enter judgment for the Commonwealth that Miller is a sexually violent predator as defined by the Act, and remand the case to the circuit court for further proceedings as directed in Code § 37.2-908.

Reversed, judgment in part, and remanded.