# COURT OF APPEALS OF VIRGINIA

### Record No. 1362-25-3

TODD D. LAWSON, SOMETIMES KNOWN AS
TODD DEAN LAWSON

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Malveaux, Athey and Frucci

Opinion Issued May 5, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Leisa K. Ciaffone, Judge

(John S. Koehler; The Law Office of James Steele, PLLC, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Amanda L. Lavin, Assistant Attorney General; Theophani K. Stamos, Deputy Attorney General; Erin D. Whealton, Senior Assistant Attorney General/Chief, on brief), for appellee. Appellee submitting on brief.

## MEMORANDUM OPINION
## PER CURIAM

Todd Dean Lawson ("Lawson") appeals a judgment by the Circuit Court of the City of

Roanoke ("trial court") recommitting him to the custody of the Department of Behavioral Health

and Developmental Services ("Department") for inpatient treatment at the Virginia Center for

Behavioral Rehabilitation ("VCBR"). Lawson assigns error to the trial court for determining that he

continued to be a sexually violent predator, and for failing to determine that he was eligible for

release to conditional community-based treatment. Finding no error, we affirm.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in

# I. BACKGROUND[3]

Lawson raped a family acquaintance in 2007 while on supervised probation. He lured the victim into a basement and, when the victim tried to escape, he forced her onto a mattress, "held her down with his weight," "covered her mouth to muffle her cries," and "forced penile-vaginal sex on her as she cried." Lawson subsequently pleaded guilty to rape and was sentenced to 5 years' incarceration, all suspended except for the time he had already served awaiting trial. When Lawson later received a new conviction while on probation, the entirety of his suspended sentence for the rape was revoked.

In 2013, as Lawson was completing his sentence, the Commonwealth petitioned the trial court to involuntarily commit Lawson to VCBR pursuant to the Civil Commitment of Sexually Violent Predators Act. *See* Code §§ 37.2-900 to -921. Lawson subsequently stipulated that he was a sexually violent predator, and the trial court found that he did "not satisfy the criteria for conditional release." Accordingly, the trial court committed him to the custody of the Department for admission to VCBR.

The trial court recommitted Lawson to VCBR after annual review hearings in 2014, 2015, and 2016. During the next annual review hearing, the parties stipulated that Lawson was suitable for conditional release, and in October of 2018, the trial court ordered that Lawson be released based upon him complying with a conditional release plan. In January of 2020, the trial court found Lawson in violation of the terms of his conditional release plan and further determined that he was

---

the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[3] We "view the facts in the light most favorable to the Commonwealth, the prevailing party below." *Shivaee v. Commonwealth*, 270 Va. 112, 127 (2005). "We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." *Id.* Additionally, the record in this case was partially sealed. "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

"no longer suitable for conditional release." The trial court then recommitted him to the custody of the Department for readmission to VCBR.

Following further treatment at VCBR, in March of 2022 the trial court again ordered Lawson's release into the community pursuant to a conditional release plan. Between July of 2023 and March of 2024, Botetourt County law enforcement officers were contacted and responded to several reports of domestic disturbances at Lawson's home involving Lawson's wife and daughter. Lawson was subsequently arrested for assault and battery of his wife on two separate occasions. In each case, the Botetourt County Juvenile and Domestic Relations District Court found the facts sufficient to convict Lawson but took the matters under advisement. Lawson was also arrested a third time for assault and battery of his daughter, but that charge was dismissed because his wife and daughter would not testify.

On March 18, 2024, Lawson's probation officer petitioned the trial court for an emergency custody order under Code § 37.2-913. The probation officer reported that Lawson's criminal acts violated the terms of his conditional release and noted that after his most recent charge, Lawson was hospitalized briefly "for mental health concerns." The trial court entered an emergency custody order that same day. The trial court then held a hearing to consider whether to continue to hold Lawson. Following the hearing, the trial court again revoked Lawson's conditional release, finding that he had failed to manage his behavior. The trial court also held that Lawson was in need of secure inpatient treatment and placed him back in the custody of the Department for secure inpatient treatment at VCBR.[4]

On June 23, 2025, Lawson returned to the trial court for an annual review hearing to determine whether he remained a sexually violent predator and, if so, whether there was a less

---

[4] Lawson appealed the circuit court's revocation of his conditional release, and this Court affirmed the circuit court's decision on April 21, 2025. *See Lawson v. Commonwealth*, No. 1560-24-3 (Va. Ct. App. Apr. 21, 2025) (order).

restrictive alternative to inpatient treatment. Following opening statements, the Commonwealth presented its evidence in support of Lawson continuing to receive inpatient treatment at VCBR.

Licensed clinical psychologist Demetria Brown ("Dr. Brown") evaluated Lawson before the hearing on behalf of the Commonwealth. Her reports[5] were admitted into evidence, and the Commonwealth called her to testify. Dr. Brown reported that Lawson had several mental health disorders but that his antisocial personality disorder caused his sexually violent behavior and was "one of the driving forces behind . . . Lawson's prior sexually violent offense," which made him "likely to commit sexually violent offenses in the future."[6] Dr. Brown opined that Lawson met six of the seven criteria[7] for antisocial personality disorder, including failure to conform to societal norms, lying, impulsivity, "[i]rritability and aggressiveness," and lack of concern or remorse. Dr. Brown conceded that Lawson no longer suffered from exhibitionistic disorder but noted that this disorder is "not considered one of the predicate type disorders" for being a sexually violent predator. She also concluded that Lawson's antisocial personality disorder diagnosis made him "likely to commit sexually violent offenses in the future." Dr. Brown ultimately concluded that Lawson remained a sexually violent predator.

Dr. Brown also testified that Lawson "continue[d] to experience difficulty with his regulation, difficulty with problem-solving and using his more adaptive coping skills, his use of outside resources or things to help him manage his dysregulation." She noted that all these

---

[5] Dr. Brown completed two evaluation reports regarding Lawson. She completed the first one on December 12, 2024, because the initial hearing date was scheduled for February of 2025. Once it moved to June 23, Dr. Brown completed an updated report on June 13 to have prepared before June 23. She clarified during her testimony that she held the same opinions in both reports.

[6] Lawson was also diagnosed with Attention-Deficit Hyperactivity Disorder, "Unspecified Anxiety Disorder," and Borderline Intellectual Functioning.

[7] Dr. Brown's report noted that the presence of only three criteria is necessary to establish a diagnosis of antisocial personality disorder.

circumstances correlated with Lawson committing sexually violent acts. Additionally, she explained that even though it had "been some time" since Lawson's most recent sexually violent offense, he still exhibited unregulated sexual behavior upon release and "ha[d] not had . . . a consistent period where . . . we c[ould] look at him differently."

Additionally, Dr. Brown reported that, in the months since his most recent commitment to VCBR, Lawson had engaged in several arguments requiring staff intervention. Although he had reached the second phase of sex offender treatment at VCBR, he continued to struggle with problem solving, frustration, and accepting responsibility for his problematic behaviors. Dr. Brown also reported that Lawson could identify his risk factors for sexual offending and behaviors leading to conditional release violations, but he had not clearly internalized these factors to "mitigate, diminish, or decrease" the risk of committing a new sexually violent offense. She recalled that Lawson, when discussing his risk to others, stated, "Because I don't care about the victim, person, I might offend again, because I only care about myself; I don't care about anybody else, and I am out to get what I want." Lawson went on to tell her that he "wants what he wants." Ultimately, due to his struggles with self-regulation, rules, and treatment compliance, Dr. Brown opined that outpatient treatment was inadequate to treat Lawson or ensure that he would manage his own behavior.

Dr. Craig S. King ("Dr. King") evaluated Lawson in preparation for the hearing on Lawson's behalf. While Dr. King did not testify, his report was also admitted into evidence. In his report, Dr. King also concluded that Lawson remained a sexually violent predator who did not meet the criteria for conditional release. Dr. King, like Dr. Brown, found that Lawson met the diagnostic criteria for antisocial personality disorder, noting "a pervasive pattern of disregard for and violation of the rights of others." Dr. King further explained that "Lawson has been given three chances, two most recently while on conditional release, and he was unable to

achieve stability." Dr. King also reported that, since returning to VCBR, Lawson had significant difficulty self-regulating, managing his emotions, and effectively solving problems. Dr. King noted that although Lawson recognized these issues, he downplayed their significance. Moreover, Dr. King reported that Lawson had a long history of "interpersonal conflict with his peers and in romantic relationships." Dr. King opined that Lawson had to "demonstrate that he can effectively manage his emotions, behavior, and stress and effectively problem-solve before he will be ready for a third/fourth chance on conditional release" and "explain how his risk factors apply to him and how he will manage them in the community." Dr. King reported that without these skills, "his conditional release may present an undue risk to public safety." Dr. King recommended continued inpatient treatment.

At the conclusion of the Commonwealth's case-in-chief, Lawson, testifying on his own behalf, claimed that he did well in treatment. He contended that "[Dr. Brown] don't really know what's going on in treatment because she only comes, like, once a year . . . and see[s] somebody for, like, 15 minutes."[8] He "th[ought] [he] c[ould] manage [him]self out in the community now" because he took his medication, admitted his problems, and "[had] been working and everything." He further testified that he should be conditionally released because while he works, he "say[s] hi" to "females . . . in the hallway" and does not do anything wrong.

Following closing statements, the trial court took the matter under advisement. On July 31, 2025, the trial court issued a letter opinion, ruling that Lawson remained a sexually violent predator who required secure inpatient treatment. The trial court relied on the expert testimony, finding Dr. Brown was "thorough, credible, logical, and [her opinion was] well supported by the

---

[8] The Commonwealth recalled Dr. Brown, who testified that she interviewed Lawson for longer than 15 minutes. She also averred that in fashioning her reports, she reviewed "very detailed" progress reports that were completed "every 90 days" and therapeutic notes that permit her to "piece out exactly what [Lawson] said based on the therapist that was there" in group-therapy sessions that she cannot attend.

documents to which she referred." It stated that "[Lawson's] antisocial personality disorder leads him to be unable to conform his behavior to society's expectations," further noting that Lawson "lacks regard for the safety of others," "lacks remorse," and "relieves his emotions . . . by using drugs and having sex." The trial court further emphasized that Lawson "will not commit to treatment and learn the skills needed to ameliorate his condition." The trial court also explained that "[Lawson] continues to need inpatient treatment because he has not reached the point in which he can consistently regulate his emotions and identify his risk factors." Finally, the trial court stated that Lawson told Dr. Brown that he "wants what he wants," and Lawson still "needs to fully commit to treatment . . . so at some point he will be able to resist 'what he wants.'" Accordingly, the trial court recommitted Lawson to the Department's custody for inpatient treatment at VCBR. Lawson appealed.

## II. ANALYSIS

### A. *Standard of Review*

In cases reviewing a trial court's ruling on whether a defendant is a sexually violent predator or whether conditional release is appropriate, "we appl[y] the standard applicable to appellate review of determinations of fact by a trial court or jury." *DeMille v. Commonwealth*, 283 Va. 316, 323 (2012). Accordingly, we defer to the trial court's judgment "unless it is plainly wrong or without evidence to support it." *Commonwealth v. Squire*, 278 Va. 746, 749 (2009).

### B. *The trial court did not err by finding that Lawson was a sexually violent predator who was not eligible for conditional release.*

Lawson argues that the evidence failed to prove that he remained a sexually violent predator, because he no longer suffered from an "exhibitionistic disorder" and his current diagnoses did not include a sexual violence component. Lawson also maintains that he qualified for conditional release because he had not committed any sexually violent or predatory offenses while on conditional release. We disagree.

A "[s]exually violent predator" is "any person who (i) has been convicted of a sexually violent offense . . . ; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts."[9] Code § 37.2-900. At an annual review hearing, the Commonwealth must prove "by clear and convincing evidence that the respondent remains a sexually violent predator." Code § 37.2-910(C). "This evidentiary standard describes an intermediate level of proof that exceeds the 'preponderance' standard, but does not reach the level of certainty required in criminal cases of 'beyond a reasonable doubt.'" *Commonwealth v. Miller*, 273 Va. 540, 551 (2007) (quoting *Grubb v. Grubb*, 272 Va. 45, 54 (2006)). The trial court's determination of whether a respondent remains a sexually violent predator must "be based on the totality of the record, including but not limited to expert testimony." *DeMille*, 283 Va. at 318; *see Squire*, 278 Va. at 751 (noting that "the opinion of experts is not dispositive" in deciding whether a defendant is likely to commit sexually violent acts).

If the trial court finds that the respondent remains a sexually violent predator, the court "shall order that he remain in the custody of the Commissioner for secure inpatient hospitalization and treatment or that he be conditionally released." Code § 37.2-910(D). To be eligible for conditional release, the circuit court must find that:

> (i) [the respondent] does not need secure inpatient treatment but needs outpatient treatment or monitoring to prevent his condition from deteriorating to a degree that he would need secure inpatient treatment;
>
> (ii) appropriate outpatient supervision and treatment are reasonably available;
>
> (iii) there is significant reason to believe that the respondent, if conditionally released, would comply with the conditions specified; and

---

[9] Whether Lawson satisfied the first clause of this definition is not in dispute.

> (iv) conditional release will not present an undue risk to public safety.

Code § 37.2-912(A). "[C]onditional release is permitted only after a judicial determination that [the respondent] satisfies all four criteria." *Lotz v. Commonwealth*, 277 Va. 345, 350 (2009). And the trial court "may consider" several factors in making this determination, including "the nature and circumstances of the sexually violent offense" the respondent committed, "the respondent's response to treatment while in secure inpatient treatment or on conditional release," the respondent's past and current mental condition, and "any other factors that the court deems relevant." Code § 37.2-912(A).

Here, the record supports the trial court's finding that Lawson remained a sexually violent predator who did not meet the criteria for conditional release. First, the trial court was not plainly wrong to conclude that Lawson, "because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." Code § 37.2-900. Doctors Brown and King agreed that Lawson's antisocial personality diminished his ability to regulate his behavior. Dr. Brown specifically concluded that Lawson's antisocial personality disorder was a driving force for his previous sexually violent offense. Dr. Brown also emphasized that the diagnosis made him "likely to commit sexually violent offenses in the future," particularly because Lawson still evinced "difficulty with problem-solving and using his more adaptive coping skills, his use of outside resources or things to help him manage his dysregulation." This is further evinced by the fact that several factors underlying Lawson's antisocial personality disorder indicate that Lawson still struggles with impulsivity, irritability, aggressiveness, and a lack of remorse for his conduct. *See DeMille*, 283 Va. at 324 (holding that the respondent was likely to engage in further sexually violent acts, in part, because the respondent "continued to have difficulty with impulse control"). Lastly, the conclusion

that Lawson's antisocial personality disorder made him more likely to engage in sexually violent acts was also supported by Lawson's history of physical conflict with his peers, wife, and daughter.

Lawson contends that he is not likely to engage in sexually violent acts because he no longer suffers from exhibitionist disorder. But this argument fails to appreciate what specific disorder underlies his likelihood of engaging in sexually violent acts. Specifically, both Dr. Brown and Dr. King found Lawson's antisocial personality disorder central to this inquiry, not his exhibitionist disorder. Dr. Brown particularly emphasized this during her testimony, which the trial court found to be "thorough, credible, logical, and well supported by the documents to which she referred." *See Commonwealth v. Jackson*, 276 Va. 184, 197 (2008) ("This Court will not substitute its judgment on the credibility of a witness for that of the circuit court."). Giving deference to this determination, we cannot conclude that the trial court's holding was "plainly wrong or without evidence to support it." *Squire*, 278 Va. at 749.

Further, the trial court was not plainly wrong in finding that Lawson did not satisfy the conditional-release criteria. *See* Code § 37.2-912(A). Both Dr. Brown and Dr. King concluded that Lawson was unable to successfully manage his behavior while on conditional release, despite having multiple opportunities in the past to do so. They also agreed that Lawson was unable to identify his risk factors and manage his emotions, making him "an undue risk to public safety" that could not be adequately addressed in a less-restrictive environment. Additionally, Dr. Brown testified that, since returning to VCBR, Lawson had significant difficulty with self-regulation and problem solving. Coupled with Lawson's statements that he "wants what he wants," the trial court concluded that Lawson simply was not ready for inpatient care at the time of the hearing.

As Lawson asserts on brief, he did not engage in new sexually violent offenses when previously on conditional release; however, as Dr. Brown specifically explained, Lawson still exhibited unregulated sexual behavior upon release and "ha[d] not had . . . a consistent period

- 10 -

where . . . we c[ould] look at him differently." Moreover, Code § 37.2-912(A) does not require a respondent to refrain from committing a sexually violent offense to be conditionally released; it requires that "there is significant reason to believe that the respondent, if conditionally released, would comply with the conditions specified" and that the respondent "not present an undue risk to public safety." Code § 37.2-912(A)(iii)-(iv). The Commonwealth's evidence satisfied these factors, so Lawson's contention to the contrary is unpersuasive.

Hence, the evidence in the record supported the trial court's determination that "because of a mental abnormality or personality disorder," Lawson found "it difficult to control his predatory behavior, which ma[de] him likely to engage in sexually violent acts." Code § 37.2-900. The circuit court was also not plainly wrong in finding that outpatient supervision was insufficient to manage Lawson's behavior and that conditional release would pose an undue risk to public safety. Code § 37.2-912(A). Accordingly, the trial court did not err in rendering its judgment.

### III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*