COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Friedman and Lorish


MWANDO MICHAEL AMERSON

v.     Record No. 1210-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 23, 2025


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James Clayton Lewis, Judge

(Mark H. Branca; The Irving Law Firm, P.C., on brief), for
appellant.

(Jason S. Miyares, Attorney General; Theophani Stamos, Deputy
Attorney General; Susan Foster Barr, Senior Assistant Attorney
General, on brief), for appellee.


Mwando Michael Amerson ("Amerson") appeals from the judgment of the Circuit Court of

the City of Virginia Beach ("circuit court") determining that he remains a sexually violent predator

pursuant to Code § 37.2-910. On appeal, Amerson assigns error to the circuit court for finding,

by clear and convincing evidence, that he remained a sexually violent predator. Finding no error,

we affirm.[1]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a).

## I. BACKGROUND[2]

In 1999, Amerson pleaded guilty in the circuit court to attempted rape and was sentenced to five years' incarceration with four years and two months suspended. As part of his plea agreement, Amerson acknowledged that he had pulled into a parking lot while driving a 15-year-old female to her home. He further agreed that after attempting to kiss the female victim, he climbed on top of her and attempted to pry her legs apart. He also did not dispute that in response to his actions, she told him "'No' and that she didn't want to do this." Others present in the parking lot during the attempted rape overheard the 15-year-old victim yelling for help. Amerson, who was 22 years old at the time of the offense, was found by law enforcement on top of the victim with his pants unbuttoned and unzipped.

In 2003, Amerson also pleaded guilty in a Washington, D.C. court to second-degree child sexual abuse of a 12-year-old girl. He was sentenced to three years' incarceration on that conviction. The next year, the circuit court found him in violation of the terms and conditions of his probation and revoked his previously suspended sentence on the rape conviction before ordering him to serve the balance of his previously suspended four-year-and-two-month sentence.

In 2008, as Amerson neared the completion of his sentence on the rape conviction, the Commonwealth petitioned the circuit court to involuntarily commit him under the Civil Commitment of Sexually Violent Predators Act ("SVPA"). *See* Code §§ 37.2-900 to -921.

---

[2] When a respondent appeals a circuit court's judgment that he is a sexually violent predator, this Court "view[s] the facts in the light most favorable to the Commonwealth." *Shivaee v. Commonwealth*, 270 Va. 112, 127 (2005). "We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." *Id.* Further, the record in this case was partially sealed. "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023). Lastly, the circuit court entered a consent order releasing Amerson for outpatient treatment under the terms of a conditional release plan. Amerson does not challenge his conditional release. Accordingly, we limit our recitation to evidence relevant to the circuit court's finding that Amerson remained a sexually violent predator.

During the subsequent hearing, Amerson stipulated that he had been previously convicted of a sexually violent offense and that he suffered from a mental abnormality or personality disorder that made his predatory behavior difficult to control and made him likely to engage in sexually violent acts. After considering the petition and stipulation, the circuit court adjudicated Amerson a sexually violent predator.

Following a review of his status in 2011, Amerson was subsequently released subject to a conditional release plan. In June of 2016, the probation officer monitoring Amerson's compliance with the conditional release plan reported to the circuit court that, among other things, Amerson had maintained online social network accounts without the probation officer's approval. He also reported that Amerson had violated his curfew several times, failed to be honest with his probation officer, and had been evicted from his approved residence. As a result of the report, the circuit court found that although Amerson had violated the terms and conditions of his release, he still remained suitable for outpatient treatment under a revised conditional release plan. Amerson's probation officer subsequently reported that Amerson continued to accrue curfew violations and had also tested positive for cocaine. After a subsequent hearing, the circuit court found that Amerson violated the conditions of his release again and was "no longer suitable for conditional release." Accordingly, the circuit court recommitted Amerson to the custody of the Department of Behavioral Health and Developmental Services ("DBHDS") for inpatient treatment. After a subsequent review hearing in 2018, the circuit court determined that Amerson remained a sexually violent predator and recommitted him to DBHDS custody for further inpatient treatment.

During his next annual review, Amerson stipulated that he remained a sexually violent predator, and, in January of 2020, the circuit court entered a consent order releasing Amerson for outpatient treatment under the terms of a conditional release plan. Later that year, however, Amerson was again charged with sexual battery for touching a 16-year-old girl's buttocks without

her consent.[3]  As a result, the circuit court revoked Amerson's conditional release in October of 2021 and recommitted him to the custody of DBHDS for inpatient treatment.  In 2023, the circuit court again determined that Amerson remained a sexually violent predator and was not eligible for conditional release.[4]

Before his most recent review hearing in 2024, Amerson was evaluated by Doctors Mario J.P. Dennis ("Dr. Dennis") and Joseph J. Plaud ("Dr. Plaud"), who came to different conclusions as to whether Amerson remained a sexually violent predator.  Regarding his recent sexual battery offense, Amerson advised Dr. Dennis that he visited a fast-food restaurant where he saw the 16-year-old victim.  He thought she smiled at him, and he wanted to speak with her and get her phone number.  Amerson admitted to touching her buttocks and told Dr. Dennis that he "was in the moment" and felt "cocky" from flirting with a woman earlier that day.  Institutional progress reports from within DBHDS stated that Amerson perceived the victim's smile as an indication that she might be open to having sex and he admitted that, upon seeing her, he immediately began planning to discretely "touch her on the butt" as he "thought [he] could touch her on the butt and get away with it."  When asked about the victim's age, Amerson told Dr. Dennis that "[s]ometimes you can't tell their age" and that he did not think she was a teenager.  However, Dr. Dennis opined that Amerson's inability to discern the victim's age "strain[ed] credulity." Dr. Dennis's report also summarized Amerson's previous admissions regarding his sexual history, which included multiple instances of bribing or manipulating someone to have sex with him, "ha[ving] sex with someone who was more intoxicated than him," and "physically forc[ing]

---

[3] In November of that year, Amerson was convicted of assault and battery and sentenced to six months in jail, with three months suspended.

[4] This Court affirmed the circuit court's determination on appeal.  *See Amerson v. Commonwealth*, No. 1070-23-1 (Va. Ct. App. July 9, 2024).

someone to have sex with him that did not want to," restraining his victims' hands when they objected.

Dr. Dennis subsequently diagnosed Amerson with personality, sexual, and substance abuse disorders.[5] His report noted that Amerson had "a lengthy history of non-consenting sexual contacts and offenses," including his latest sexual battery offense. Thus, Dr. Dennis opined, the "diagnosis remain[ed] salient for" Amerson, and he warned that Amerson's "persistent deviant arousal that is associated with non-consent" could not be overlooked or downplayed with respect to Amerson's treatment needs and risk level.

Dr. Dennis further opined that Amerson's non-consent disorder affects his "emotional and/or volitional capacity[] and predisposes him to commit sexually violent acts" and that Amerson's personality disorder diagnosis was supported by his history of failing to conform to social norms regarding lawful behavior, deceitfulness, impulsivity, reckless disregard for others' safety, and lack of empathy for his victims. He also noted that Amerson's personality disorder predisposed him to commit sexually violent acts, as documented by Amerson's admission to "specific and continuing attraction to female teenagers." He noted that this attraction manifested itself with Amerson's repeated attempts to seek out teenagers for sexual relations, which is supported by the hebephilia and ephebophilia diagnoses. Dr. Dennis further found that Amerson's "surreptitious touching of" his latest victim demonstrated that his frotteuristic disorder remained active. Additionally, Dr. Dennis found it significant that Amerson presented

---

[5] His report specifically diagnosed Amerson with "Other Specified Paraphilic Disorder (Non-Consent, Hebephilia, and Ephebophilia), Other Specified Personality Disorder (Antisocial), Voyeuristic Disorder (in remission), Frotteuristic Disorder, Attention Deficit Hyperactivity Disorder." Dr. Dennis noted in his testimony that a person with hebephilia seeks out "post-pubescent adolescent[s] for sexual arousal purposes . . . at the expense of appropriate intimate relationships." Ephebophilia, specifically, refers to those with a "sexual interest in mid-to-late teenagers, generally ages 15-17."

with both "antisociality and deviant sexual interests," because the combination indicated a higher risk of recidivism than either alone.

Dr. Dennis also assessed Amerson's actuarial risk of being charged with or convicted of a new sexual offense as above average, stating that "*clinically*[,] [Amerson] remains a high risk for sexual recidivism" based on "dynamic risk factors." The basis for this increased risk in Dr. Dennis's opinion was that Amerson had a history of poorly regulated sexual behavior while in the community. Dr. Dennis also expressed concern over Amerson's recent behavior, because Amerson admitted to approaching his latest victim "deliberately and with a clear intention of touching her," which he considered evidence that Amerson's "violations appear[ed] to have . . . become more intentional." Dr. Dennis further identified Amerson's "need for immediate gratification" as a risk factor, which although reduced when "in structured environments," had led to problems in the community. He observed that when last in the community, Amerson failed to "use what he ostensibly learned in treatment."[6] Also troubling to Dr. Dennis was Amerson's ability to employ a façade of cooperation with authority figures despite engaging in behaviors resulting in multiple detentions, two of which were previous revocations of his conditional release. He further documented Amerson engaging in "impression management,"[7] such as reframing his violations as well-intentioned or blaming others. Dr. Dennis identified Amerson's objectification of his victims and history of manipulating and victimizing vulnerable females as increasing the risk of potential recidivism and warned that Amerson's preoccupation

---

[6] When speaking with Dr. Dennis, Amerson agreed that "complacency" surrounding his treatment could contribute to his risk of reoffending and that he specifically felt "'cocky' and emboldened" when he committed his 2020 offense.

[7] Dr. Dennis noted that impression management is a form of manipulation. "It can be considered a goal-directed, conscious, or unconscious attempt to influence the perceptions of other people about oneself, by controlling information in social interaction. Simply put, it means concealing illicit behavior and attitudes while projecting a prosocial façade."

with sex, his history of non-consensual sex, and the presence of multiple paraphilic diagnoses were additional risk factors increasing the potential likelihood that Amerson would reoffend.

Finally, Dr. Dennis noted that Amerson had "a nearly 30-year history of sexual offending or unhealthy sexual behavior." Highlighting Amerson's 2020 offense, Dr. Dennis opined "that it did not take much to encourage . . . Amerson's lapse into sexualized behavior." Based upon all of the above, Dr. Dennis concluded that Amerson remained a sexually violent predator.

In contrast to Dr. Dennis's conclusion, Dr. Plaud concluded that Amerson was not a sexually violent predator. Dr. Plaud opined in his report that "Amerson's historic abusive behavior was a function of faulty decision making, social and sexual immaturity that did not link his illegal sexual behavior to an appropriate understanding of the wrongfulness of his behavior, and his actively engaging in cognitive distortions." Dr. Plaud concluded from his interactions with Amerson that there was "no scientific or clinical justification for the premise that" Amerson presently suffered from a condition that would result in a loss of volitional capacity over his sexual behavior that would make it likely Amerson would commit another sexually violent act. Amerson also lacked, in Dr. Plaud's opinion, "acute dynamic risk factors" that would necessitate his continued supervision. Thus, Dr. Plaud opined that Amerson was sufficiently rehabilitated for re-release.

During Amerson's 2024 annual review hearing, Dr. Dennis confirmed Amerson's diagnoses through his report. He reiterated his opinion that Amerson remained a sexually violent predator and characterized his risk of committing another sexually violent offense as "moderate[ly] high to high." Dr. Dennis explained that the 2020 offense "emphasized that [Amerson] continues to have the same cognitive and behavioral issues associated with being a sexually violent predator" and "embodie[d] a lot of [the] same factors that appeared earlier in his offense history." From his observations, Dr. Dennis opined that there had not been any

"significant reduction in" Amerson's risk of reoffending, emphasizing that Amerson had done well in treatment before but reoffended within months of being released into the community. Also clinically significant to Dr. Dennis was the fact that Amerson reoffended in 2020 when he was experiencing positive emotions, because it meant that anyone supervising him would "have to monitor not just the negative affect that he might experience in the community but also if he's doing really well." Dr. Dennis finally explained that Amerson, when committed, did not evidence impulsivity, frotteuristic, or sexually assaultive behavior because the facility's environment is "very sheltered, highly structured," and "very different" than the outside community. And his conclusion was drawn from the fact that, while committed, Amerson had no access to female teenagers, which his history demonstrated is "his preferred victim pool."

Dr. Plaud then testified consistent with his written evaluation, opining that Amerson lacked "a diagnosable mental abnormality [or] personality disorder" and, even assuming that Amerson had a mental abnormality or personality disorder, that Amerson "is able to control himself sexually." Dr. Plaud believed it was significant that Amerson had not committed a sexually violent offense in over 20 years and contended that Amerson's recent progress report, which noted that Amerson's sexual self-regulation was controlled, supported his opinion. Dr. Plaud also testified that Amerson's ability to de-escalate a confrontation with another patient and progress notes about Amerson displaying empathy to other patients countered the personality disorder diagnosis and showed he had volitional capacity. Amerson then moved to strike the evidence in favor of his continued commitment, which the circuit court denied.

At the conclusion of the evidence, the circuit court found that Amerson remained a sexually violent predator. The circuit court later entered a consent order releasing Amerson for outpatient treatment under the terms of a conditional release plan. Amerson appealed.

## II. ANALYSIS

### A. *Standard of Review*

In reviewing the denial of petitions brought under the SVPA, we "review . . . the whole record" before the circuit court. *DeMille v. Commonwealth*, 283 Va. 316, 325 (2012). As this review focuses on "the sufficiency of the evidence on appeal, we apply an established standard of review. We will approve the circuit court's holding unless it is plainly wrong or without evidentiary support," *Commonwealth v. Miller*, 273 Va. 540, 551 (2007), and we defer to the circuit court's balancing of expert testimony. *See Commonwealth v. Squire*, 278 Va. 746, 751 (2009).

### B. *The circuit court's finding that Amerson remained a sexually violent predator was not plainly wrong or without supporting evidence.*

On appeal, Amerson challenges the circuit court's finding that he remains a sexually violent predator, contending that the court failed to properly consider Dr. Plaud's testimony and report that provided he had addressed the circumstances that led to his commitment, he had accepted responsibility for the 2020 offense, and he had not engaged in any diagnosis-related behaviors while committed. He further contends that the circuit court erred in crediting Dr. Dennis's report as "Dr. Dennis's diagnoses rely primarily on historical data and past behaviors . . . and not his current mental state." We disagree.

A "[s]exually violent predator" is "any person who (i) has been convicted of a sexually violent offense . . . ; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." Code § 37.2-900. At a review hearing, the Commonwealth must prove "by clear and convincing evidence that the respondent remains a sexually violent predator." Code § 37.2-910(C). Whether a respondent remains "a sexually violent predator likely to engage in sexually violent acts is to be based on the totality of the record, including but not limited to expert testimony." *DeMille*, 283 Va. at 318.

Here, Dr. Dennis diagnosed Amerson with several paraphilic disorders and a personality disorder.[8] Concerning the diagnosis of Other Specified Paraphilic Disorder (Non-Consent), Dr. Dennis noted Amerson's "lengthy history of non-consenting sexual contacts and offenses," including his 2020 offense. Amerson admitted that, when last in the community, he thought he "could touch [his victim] on the butt and get away with it." So, Dr. Dennis concluded that the "diagnosis remain[ed] salient" and opined that this disorder "predispose[d Amerson] to commit sexually violent acts." Dr. Dennis also found it clinically significant that Amerson had both "antisociality and deviant sexual interests," because the combination indicated a higher risk of recidivism than either alone. Hence, Dr. Dennis's account was well supported by evidence including Amerson's own conduct.

In addition, the record rebuts Amerson's contention that Dr. Dennis's opinion was based primarily on outdated information. Dr. Dennis observed Amerson's lengthy "history of sexual offending," of which the 2020 offense was the latest example, and estimated that Amerson was at a "moderate high to high" risk of committing another sexually violent offense. Acknowledging Amerson's success in treatment, Dr. Dennis explained that the therapeutic environment within the facility was "very sheltered" compared to the community at large and did not provide ready access to Amerson's "preferred victim pool." Dr. Dennis also remarked that although Amerson did well in treatment before he was conditionally released in 2020, within months of release, he reoffended sexually.

At heart, this case hinges on competing expert opinions. Amerson suggests that Dr. Plaud's opinion was more credible. In finding that Amerson remained a sexually violent predator, the circuit court necessarily credited Dr. Dennis's report and opinions expressed during the review hearing over Dr. Plaud's. That judgment represents a credibility determination that is entitled to

_____

[8] Amerson concedes on brief that he was convicted of a sexually violent offense.

deference since it is supported by facts in the record. *Squire*, 278 Va. at 749-51. Thus, we are compelled to leave the circuit court's credibility determination untouched. Accordingly, we find that the circuit court's holding that Amerson remained a sexually violent predator was neither plainly wrong nor without evidentiary support. *Id.* at 749.

### III. CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*